969 A.2d 953

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Ralph Edward HALL, Jr.**

**Misc. AG No. 45, Sept. Term, 2006.**

Court of Appeals of Maryland.

April 15, 2009.

Dolores O. Ridgell, Assistant Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Jennifer Evans, Rockville, for respondent.

Argued before BELL, C.J.,*RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary Or Remedial Action ("Petition") against Ralph E. Hall, Jr., the respondent. The Petition charged that the respondent violated Maryland Rules of Professional Conduct 1.3, Diligence,[2] 1.4, Communication,[3] 1.6, Confidentiality of Information,[4] 1.7, Conflict of Interest,[5]

---

* Raker, J., now retired, participated in the hearing and conference on this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751, as relevant, provides:

"(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

3. Rule 1.4, in pertinent part, provides:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

4. Rule 1.6, as relevant, provides:

"(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."

5. Rule 1.7, in pertinent part, provides:

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

and 8.4, Misconduct,[6] as adopted by Maryland Rule 16–812.

We referred the case, pursuant to Rule 16–752(a),[7] to the Honorable Michael D. Mason, of the Circuit Court for Montgomery County, for hearing pursuant to Rule 16–757(c).[8] Following the hearing on the Petition, the matter was continued "to permit counsel for the parties to file Proposed Findings of Fact and Conclusions of Law." After these pleadings were submitted and further arguments were heard, the hearing judge issued an opinion in which he made the following findings of fact.

The respondent, Ralph E. Hall, Jr., graduated from law school in 1977 and is a member of the Maryland State Bar. He has been a solo practitioner for most of his legal career.  In

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2)the client consents after consultation...."

**6.** Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

"(d) engage in conduct that is prejudicial to the administration of justice."

**7.** Rule 16–752(a) provides:

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record.  The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**8.** Maryland Rule 16–757(c) provides:

"(c) Findings and conclusions.  The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.  If dictated into the record, the statement shall be promptly transcribed.  Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing.  The clerk shall mail a copy of the statement to each party."

January of 2003, Carolyn Mudano met with the respondent to discuss her legal options after an initial complaint with the Human Rights Commission, filed by another attorney, failed to yield the results she desired. Ms. Mudano's complaint to the Human Rights Commission alleged that her supervisors at the Montgomery County Department of Public Works engaged in employment discrimination after they discovered that Ms. Mudano was having a relationship with her married supervisor. The Department of Public Works immediately transferred Ms. Mudano to another office, but she wanted to regain her former position. During mediation with the County, however, Ms. Mudano reluctantly agreed to allowing the County to find her a new position that would be mutually satisfactory. Eventually, Ms. Mudano became dissatisfied with the County's efforts in finding her a new position. Ms. Mudano subsequently obtained the telephone number of an attorney named Jennifer Evans. Several years earlier, Ms. Evans shared office space with the respondent, but, unbeknownst to Ms. Mudano, Ms. Evans no longer maintained her office at the respondent's location. Ms. Mudano left a message at Ms. Evans's former office, and the respondent returned Ms. Mudano's call, resulting in their initial meeting. Ms. Mudano subsequently retained the respondent, and he filed suit against Montgomery County on her behalf. Shortly thereafter, a romantic relationship began to develop between the respondent and Ms. Mudano.

"While [Ms. Mudano] had feelings for [Mr. Hall], she was concerned about beginning a personal relationship with him and the impact that might have on her case against the County. When she raised the concern with Mr. Hall, he simply smiled and told her that it was not a problem. . . . She was concerned not only about the impact that this relationship might have upon her case but also about the fact that Mr. Hall was married. Mr. Hall explained to her that his was a marriage of convenience. . . . She was also concerned about whether Mr. Hall was having a relationship with anyone else or whether he had had other relationships with clients in the past. Mr. Hall assured her that he had

not done this in the past and he was not involved in any other relationship. . . .

"While Mr. Hall denies having intercourse in the office, the Court finds Ms. Mudano's testimony in this regard credible. During the summer of 2003, Mr. Hall's mother, who lived in Florida, passed away. As a result, he had to leave suddenly and travel to Florida. He asked Ms. Mudano to keep an eye on his office and gave her the key so that she could get the mail. When he returned from Florida, he told her to keep the key."

In January of 2004, Ms. Mudano's suspicions about the respondent's infidelity to her only heightened when she caught him shopping with a former client, Ms. D, when he was supposed to be conducting legal research at Catholic University. Ms. Mudano did not tell the respondent that she saw him with another woman that evening, but she began repeatedly asking the respondent if he was seeing other people. The respondent vehemently denied that he was being unfaithful to her.

"Eventually, he said that he was tired of her questioning him . . . and that he was going to refer her to another attorney. . . . [Ms. Mudano] pleaded with him not to refer her out. He agreed to continue to represent her.

"At about that same time, she attended an appointment with her therapist. In that visit, she disclosed that she was having an affair with her attorney. The therapist explained to her that that relationship was not a good idea. After leaving the therapist, Ms. Mudano went to Mr. Hall and told him the therapist has said that the relationship was not a good idea. Mr. Hall responded by telling her she should get another attorney. He got a phone book to look for the number of an attorney he had in mind. . . . She begged him to continue representing her. Notwithstanding the therapist's opinion, he agreed."

Their personal relationship also continued, so the hearing judge found:

"On a number of occasions ..., [Ms. Mudano] used his office to conduct her personal business. He let her use his computers to check her e-mails and to do job searches. During the fall of 2004, she used the computers in his office quite frequently [while attending classes at a community college]. He had two computers. She was permitted to use both. She was uncertain if there was any client information on those computers, but in any event never saw any....

"After completing discovery, the Defendants filed a motion for summary judgment in federal court.... On March 22, 2004, following oral argument, summary judgment was granted to the Defendants. Final judgment in that case was entered on March 23, 2004. The final judgment as against [Ms. Mudano's former supervisor] was without prejudice except as to the claim for unlawful employment practices.

"After the original complaint was dismissed in federal court, Mr. Hall discussed with Ms. Mudano the advisability of filing a suit in state court against [her former supervisor/paramour] for intentional infliction of emotional distress, negligence and interference with economic relationship. With her consent, that suit was filed in the Circuit Court for Montgomery County, Maryland.... The case was specially assigned to the Honorable Joseph A. Dugan, Jr.

\* \* \*

"On October 19, 2004, following a hearing on the motion to dismiss, Judge Dugan dismissed the complaint with prejudice.[9]

---

9.  The hearing judge, Judge Mason, found that "[c]ounsel for [Ms. Mudano's former supervisor] argued that the claim filed in the Circuit Court was really a sexual harassment claim under Title VII or the Maryland Human Relations Act in the guise of a common law tort. However, Ms. Mudano had failed to name [her former supervisor] as a respondent in the administrative proceedings and therefore was barred from bringing a sexual harassment claim against him in court. Mr. Hall filed an opposition and request for a hearing." Following the hearing, Judge Dugan dismissed the complaint with prejudice.

"Mr. Hall thought that the dismissal was improperly granted and recommended Ms. Mudano appeal. After some delay, she authorized the filing of the appeal. Mr. Hall noted the appeal on November 19, 2004, one day late. Mr. Hall had failed to count October 31st in the thirty days from the entry of judgment. On December 1, 2004, [the former supervisor's] attorney filed a motion to strike the appeal. . . . Mr. Hall filed an opposition. Notwithstanding the opposition, the motion was granted and the appeal was dismissed.

\* \* \*

"In December of 2004, [Ms. Mudano] discovered for certain he was seeing another woman. After reading [an anonymous] letter, she testified that she was able to figure out who the woman was, [Ms. D]. She contacted [Ms. D] who confirmed that she was involved in a relationship with Mr. Hall and had been for some years."

The two decided to confront the respondent at his office.

"Upon entering the office, they discovered another client, [Ms. M], was present. [Ms. D] asked [Ms. M] if she also was having an affair with Mr. Hall. [Ms. M] denied that she was. [Ms. D] asked her to leave so they could talk to Ralph [the respondent]."

Immediately after [Ms. M] left the respondent's office, Ms. Mudano and [Ms. D] confronted the respondent about the lies that he had told them. Both wanted to know why he insisted that he was being faithful to them when, in fact, he was seeing other women. After the confrontation, Ms. Mudano drove to the respondent's home and told Mrs. Hall that her husband was having an affair with at least two other women. Ms. Mudano also told two other female clients of the respondent, suspecting that they also might be having a sexual relationship with the respondent.

Despite exposing the respondent's indiscretions, Ms. Mudano still believed that she could salvage her relationship with the respondent. Ms. Mudano went to the respondent's office and asked him to tell her the truth. She wanted the respon-

dent to be truthful about his indiscretions so, at least she hoped, their relationship could move forward. The respondent, however, told her to leave, and, according to Ms. Mudano, shoved her against the wall. The latter claim the hearing judge found not to be credible.

The relationship between the respondent and Ms. Mudano ended, and the respondent terminated his representation of her. Subsequently, Ms. Mudano filed a complaint with the Attorney Grievance Commission and instituted a malpractice suit [10] against the respondent. Ms. Mudano's Attorney Grievance complaint alleged that the respondent improperly revealed confidential information to another client, [Ms. D]. At the hearing, the respondent testified that he talked with [Ms. D] about Ms. Mudano's case because of [Ms. D's] familiarity, obtained as a result of her career in human resources, with the Family Medical Leave Act. [Ms. D] testified that the respondent disclosed to her that Ms. Mudano was extremely fragile and possibly suicidal. The respondent denied making such a disclosure to [Ms. D], but acknowledged that he might have told [Ms. D] that Ms. Mudano was a "nut."

The respondent maintains that the only clients he ever became sexually involved with were Ms. Mudano, beginning in August 2003, and [Ms. D], beginning in the spring of 1998. Although [Ms. M] sent him personal emails, the respondent denies ever having a sexual relationship with her.

The respondent did not believe that his personal relationship with Ms. Mudano could, or did, negatively impact his

---

10. Ms. Mudano's malpractice suit derived from Mr. Hall's failure to note a timely appeal from the Circuit Court's ruling that Ms. Mudano's employer's conduct was not outrageous as a matter of law. Although the facts indicate that there was some uncertainty on Ms. Mudano's part concerning whether to file an appeal, the facts do indicate that Mr. Hall missed the 30 day deadline to note an appeal from the Circuit Court's ruling by one day. Ms. Mudano's legal malpractice action also alleged that Mr. Hall breached a fiduciary duty to her by engaging in a personal relationship with her. The court dismissed the breach of fiduciary duty claim and concluded that even if Mr. Hall had timely filed the appeal, it would have been unsuccessful anyway. Thus, the court concluded that Ms. Mudano failed to prove that she suffered any damage.

ability to represent her or compromise her chances of succeeding on her employment discrimination claim. In fact, the respondent believed that his sexual relationship with Ms. Mudano was not discoverable by the defendants in the underlying suit.

From these findings of fact, the hearing judge drew the following conclusions of law (citations to the record omitted):

"1. Maryland Rule of Professional Conduct 1.6(a)—

\* \* \*

"There is evidence that Mr. Hall disclosed to [Ms. D] substantial personal information about Mudano. The Petitioner conceded that Mr. Hall was impliedly authorized to disclose to [Ms. D] information necessary to assist in representing Ms. Mudano with reference to her claims under the Family Medical Leave Act. However, Petitioner suggests that it was not necessary for the Respondent to discuss the personal details and/or identify the client by name. The Court does not find by clear and convincing evidence that the Petitioner has established that Mr. Hall exceeded his authority in discussing Ms. Mudano's case with [Ms. D]. In order for him to obtain information and advice from [Ms. D] with respect to Ms. Mudano's case, it was reasonably necessary for Mr. Hall to disclose to [Ms. D] the extent of Ms. Mudano's problems, including her mental and/or emotional problems.

"Separately, the Petitioner maintains that Mr. Hall violated this rule by discussing with Ms. Mudano [Ms. M's] family problems and her treatment by her ex-spouse or soon to be ex-spouse. However, it appears from the evidence that the information disclosed involved matters of public record that had previously been disclosed in court. The Court does not find by clear and convincing evidence that Mr. Hall violated Maryland Rule of Professional Conduct 1.6(a) in discussing his representation of [Ms. M] with Ms. Mudano.

"Further, the Petitioner argues that Mr. Hall's cavalier attitude toward safeguarding confidential information was

demonstrated by the access he gave Ms. Mudano and [Ms. D] to his office. The Court disagrees. While both were given access, . . . the client information was for the most part maintained on Mr. Hall's computers and protected by a password. While Ms. Mudano was given access to the computer, there is no evidence that she was given access to any client records. While Ms. Mudano was given access to the office at times when Mr. Hall was not present and assuming there were hard copies of client files available in the office, there is no evidence that Ms. Mudano searched through any of those files and thereby gained any confidential information. Further, Mr. Hall was not reasonably required to assume that she might search his client files and take precautions to guard against such an unauthorized search.

"2. Maryland Rule of Professional Conduct 1.7(b)—

\* \* \*

"The Court finds by clear and convincing evidence that Mr. Hall violated Maryland Rule of Professional Conduct 1.7(b) by engaging in a sexual relationship with Ms. Mudano at a time he was representing her in an employment discrimination suit arising out of a sexual relationship that she maintained with her former supervisor. Notwithstanding the fact that the former relationship with her supervisor may have been consensual, in the fact that during the pendency of the litigation, she was carrying on an affair with her attorney could reasonably have prejudiced her case.

\* \* \*

"Contrary to what Petitioner suggests, the Court does not find that the Respondent fully appreciated the danger to Ms. Mudano and placed his sexual desires over the best interest of his client.[11] Instead, because he failed to ade-

---

11. Ms. Mudano testified before the hearing court that she became "upset and extremely depressed" after she was transferred out of the

quately investigate her condition, he was unaware of the severity of her problem, and thereby exposed her to unreasonably and unnecessary danger by engaging in a sexual relationship with her under the circumstances. More troubling, is the fact that Respondent continued his relationship with her even after learning that her therapist had advised her that she should not be engaged in an affair with her lawyer. . . .

"Mr. Hall's conduct is further exacerbated by the fact that at the time that he was engaged in a romantic relationship with this emotionally fragile client, he was lying to her about the existence of any other relationship. He continually represented to her that he was not involved in a relationship with any other woman at a time he was involved in a relationship with [Ms. D]. In repeatedly lying to Ms. Mudano about a fact that was of extreme importance to her, Mr. Hall could not have helped but recognize these lies had the very real potential to undermine the trust and confidence which she had reposed in him and thereby severely undermine the attorney/client relationship. Once established, he was obliged to honor that relationship.

"3. Maryland Rule of Professional Conduct 8.4(c)

\* \* \*

"The Respondent acknowledges that he lied to Ms. Mudano when he told her that he was not involved in any other relationships. Under the facts of this case, as discussed by the Court in its consideration of whether the Respondent violated Maryland Rule of Professional Conduct 1.7(b), the Court finds by clear and convincing evidence that the dis-

---

Department of Public Works. She harbored feelings of betrayal and anxiety that became so intense that she contemplated suicide at one point. In a separate incident, in early 2004, after seeing the respondent at a shopping center with another woman, Ms. Mudano slashed her wrists with a razor and was taken to the hospital. Ms. Mudano's wounds were treated, but she told the hospital's staff, when asked about her wounds, that she had accidentally cut herself. The court found that, as a factual matter, Ms. Mudano never confronted the respondent with the fact that her cuts actually were intentional.

honesty and deceit in this instance rise to the level of constituting a violation of Maryland Rule of Professional Conduct 8.4(c).

"4. Maryland Rule of Professional Conduct 8.4(d)

\* \* \*

"The Court recognizes that not every instance of sexual conduct involving a client by an attorney is necessarily prejudicial to the administration of justice. However, the Court finds that in this instance, the relationship arose at least in part out of the Respondent's failure to recognize the severity of the client's emotional distress and the position of influence that he exercised over the client. The Court finds by clear and convincing evidence that the relationship in this case resulted from an exploitation, albeit unwitting, of that relationship, given the client's fragile condition. Accordingly, the relationship in this instance is one that is likely to engender disrespect for the legal profession, and is accordingly prejudicial to the administration of justice.

"5. Maryland Rule of Professional Conduct 1.3

\* \* \*

"The Respondent acknowledges that he miscounted the days and thereby missed the deadline for noting an appeal by one day. However, by way of mitigation, it is unlikely Ms. Mudano suffered any damage as a result thereof, particularly in light of Judge Thompson's finding that the appeal would not have been successful.[12]

"6. Maryland Rule of Professional Conduct 1.4(a)

---

12. In April of 2005, Ms. Mudano filed a legal malpractice suit against the respondent for both missing the deadline to note an appeal in her employment discrimination claim and for breaching his fiduciary duty by having a personal relationship with her. Judge Durke Thompson found that no such duty existed and dismissed Ms. Mudano's breach of fiduciary duty claim. Judge Thompson also ruled that Ms. Mudano's malpractice claim had to be dismissed because of her failure to establish that she had suffered any damage. Moreover, Judge Thompson concluded that even if the respondent had timely noted an appeal, it would not have been successful.

* * *

"The Court finds by clear and convincing evidence that the Respondent failed to appreciate the fact that by engaging in a sexual relationship with Ms. Mudano, he would potentially impair his ability to represent her for the reasons discussed earlier herein. Further, on one or more occasions, Ms. Mudano questioned Mr. Hall as to whether or not a personal relationship could adversely impact upon his representation of her. Mr. Hall wrongly assured her that it would not. Accordingly, the Respondent violated Maryland Rule of Professional Conduct 1.4(b) by failing to provide her with information reasonably necessary to permit her to make an informed decision regarding the representation."

The petitioner took no exceptions to the hearing judge's findings of fact or conclusions of law and recommends that the respondent be disbarred. Highlighting that the respondent was found to have had a conflict of interest and engaged in conduct involving dishonesty and deceit, all of which were prejudicial to the administration of justice, the petitioner relies on *Attorney Grievance Comm'n v. Culver* to justify its recommendation. 381 Md. 241, 286–87, 849 A.2d 423, 450 (2004). The petitioner also insists that the Court should consider the respondent's previous sanction in 1992 as an aggravating factor. *Attorney Grievance Comm'n v. Hall,* Misc. Docket (Subtitle BV) No. 25, September Term, 1990, Slip Op. filed February 25, 1992. That sanction, an indefinite suspension with the right to apply for readmission within 18 months, was imposed for the respondent's violation of several Rules of Professional Conduct in his representation of several clients. In particular, it was determined that the respondent violated Rules 1.1, Competence, 1.3, Diligence, 1.4, Communication, all of which were found to have been prejudicial to the administration of justice under Rule 8.4. Moreover, the respondent also was found to have mishandled client funds in violation of Maryland Code (1989, 1992 Supp.) § 10–306 of the Business Occupations and Professions Article and charged an unreasonable fee in violation of Rule 1.5, Fees. Notwithstanding the

fact that none of the respondent's previous disciplinary complaints involved having sexual relations with clients, the petitioner points out, he obviously is no stranger to disciplinary proceedings before the Attorney Grievance Commission.

The respondent takes exception to the factual determination made by the hearing judge that he was "currently awaiting the grant of a final divorce" at the time of the hearing. The respondent points out that neither he nor his wife had filed a divorce action at the time the hearing judge rendered his opinion. Thus, while acknowledging that this is a minor factual point for our purposes, the respondent nevertheless does take exception to this erroneous factual finding by the hearing judge. Furthermore, the respondent takes exception to the hearing judge's conclusions of law that he violated Rules 1.7(b), 8.4(c), 8.4(d) and 1.4(b).

This Court has original jurisdiction over attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Harris,* 371 Md. 510, 539, 810 A.2d 457, 474 (2002). We review *de novo* the hearing judge's conclusions of law. Rule 16–759(b)(1); *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 27, 922 A.2d 554, 569 (2007); *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 265–66, 920 A.2d 458, 463 (2007); *Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002). If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, a party's exceptions to conclusions of law will be overruled. *Goff,* 399 Md. at 28, 922 A.2d at 570; *Mba–Jonas,* 397 Md. at 700, 919 A.2d at 675; *Attorney Grievance Comm'n v. Manger,* 396 Md. 134, 146–47, 913 A.2d 1, 8 (2006). Moreover, a hearing judge's findings of fact will not be overruled unless we determine that those findings are clearly erroneous. *Goff,* 399 Md. at 28, 922 A.2d at 570; *Mahone,* 398 Md. at 265, 920 A.2d at 463; *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). The hearing judge is properly responsible for "[w]eighing the credibility of wit-

nesses and resolving any conflict in the evidence[.]" *Goff,* 399 Md. at 28, 922 A.2d at 570 (2007) (*quoting State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998)).

■ The respondent filed six exceptions to the hearing judge's findings of fact and conclusions of law under Rule 16–758.[13] The first exception, as indicated, is to the hearing judge's factual finding that "a divorce is pending" and that the respondent was "currently awaiting the grant of a final divorce." The respondent contends that, in actuality, he and his wife were separated, but neither had filed for divorce. This exception concerns a trivial finding of fact, one that hinges on a semantic argument. The hearing judge's statements are not clearly erroneous in light of the respondent's testimony that he was separated from his wife and expected to become divorced. That a complaint for divorce had not, at that point in time, been filed does not render the judge's findings in this regard clearly erroneous. Exception one is, therefore, overruled.

■ The respondent's second exception takes issue with the hearing judge's finding regarding his personal relationship with Ms. Mudano and its conclusion that he violated Rule 1.7(b) as a result of that relationship. Rule 1.7(b), as relevant here, prohibits an attorney from representing a client if the attorney's personal interests have the potential to limit materially his or her representation of the client, unless the attorney reasonably believes that his ability to represent the client will not be adversely impacted. The respondent argues that the hearing judge's finding that he violated Rule 1.7 by "engaging in a sexual relationship with Ms. Mudano at a time he was representing her in an employment discrimination suit" is inconsistent with the court's finding that he did not place "his

---

13. Maryland Rule 16–758 provides, in pertinent part:

"(b) Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c)."

sexual desires over the best interest of his client." The sentence that the respondent refers to as being inconsistent with the hearing judge's finding of a Rule 1.7(b) violation must be viewed in the context in which the hearing judge made that statement:

> "Contrary to what Petitioner suggests, the Court does not find that the Respondent fully appreciated the danger to Ms. Mudano and placed his sexual desires over the best interest of his client. Instead, because he failed to adequately investigate her condition, he was unaware of the severity of her problem, and thereby exposed her to unreasonable and unnecessary danger by engaging in a sexual relationship with her under the circumstances. More troubling, is the fact that Respondent continued his relationship with her even after learning that her therapist had advised her that she should not be engaged in an affair with her lawyer. While Mr. Hall offered to refer her to another lawyer, when Ms. Mudano rejected that suggestion, he continued the relationship with her."

The respondent attempts to raise questions about the basis for the hearing judge's conclusion of a Rule 1.7(b) violation by focusing on one ambiguous sentence included in that portion of the hearing judge's findings and conclusions. We believe, however, that when the allegedly inconsistent sentence is viewed in context, the sentence that the respondent focuses on is not at all conflicting with the hearing judge's conclusion that the respondent violated Rule 1.7(b). Instead, the hearing judge's arguably ambiguous statement is merely an acknowledgment that, although Ms. Mudano's emotional fragility might not have been crystal clear to the respondent, he surely had some knowledge that his client was not a pillar of emotional stability at the time he was having a sexual relationship with her.

The respondent maintains that his sexual relationship with Ms. Mudano, while representing her in her employment discrimination action, did not create the inherent conflict that arises when an attorney has a sexual relationship with a client that he is representing in a domestic relations matter. *Attor-*

*ney Grievance Comm'n v. Culver,* 381 Md. 241, 274, 849 A.2d 423, 443 (2004) (holding that an attorney who engages in a sexual relationship with a client, whether consensual or not, while representing a client in a matrimonial matter has committed a violation per se of Rule 1.7(b)). Therefore, the respondent maintains that the hearing judge erred when he concluded that his sexual relationship with Ms. Mudano created a conflict and resulted in his violation of Rule 1.7(b). The respondent correctly asserts that, while an attorney's mere engagement in sexual relations with a client in a domestic relations matter is a per se violation of Rule 1.7(b), *Culver,* 381 Md. at 275, 849 A.2d at 443, in non-domestic actions, Maryland has no general rule prohibiting sexual relationships between attorneys and their clients. The fact that no general rule exists, however, does not mean that such relationships should be pursued or are immune to sanctions. To the contrary:

> "In 2002, the American Bar Association Commission on Evaluation of the Rules of Professional Conduct (Ethics 2000 Commission) added new paragraph (j) to Model Rule of Professional Conduct 1.8, a bright-line rule which prohibits a lawyer from engaging in "sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced." Before this revision to the Rule, the Model Rules did not contain an explicit ban on lawyer-client sexual relationships. The comment to the Rule notes that because the relationship between the attorney and client is almost always unequal, a sexual relationship between the attorney and client can involve exploitation of the lawyer's fiduciary role, thereby violating the attorney's ethical duty not to use the trust of the client to the client's disadvantage. *See* Center for Professional Responsibility, American Bar Association, Annotated Model Rules of Professional Conduct R. 1.8(j) cmt. 17, at 145 (2003).

> "The American Bar Association, in Formal Ethics Opinion No. 92–364 (1992) disapproved of sexual relationships between attorneys and clients, concluding as follows:

" 'A sexual relationship between lawyer and client may involve unfair exploitation of the lawyer's fiduciary position, and/or significantly impair a lawyer's ability to represent the client competently, and therefore may violate both the Model Rules of Professional Conduct and the Model Code of Professional Responsibility.... First, because of the dependence that so often characterizes the attorney-client relationship, there is a significant possibility that the sexual relationship will have resulted from exploitation of the lawyer's dominant position and influence and, thus, breached the lawyer's fiduciary obligations to the client. Second, a sexual relationship with a client may affect the independence of the lawyer's judgment. Third, the lawyer's engaging in a sexual relationship with a client may create a prohibited conflict between the interests of the lawyer and those of the client. Fourth, a non-professional, yet emotionally charged, relationship between attorney and client may result in confidences being imparted in circumstances where the attorney-client privilege is not available, yet would have been, absent the personal relationship.' "

*Culver,* 381 Md. at 267–68, 849 A.2d at 438–39.

Although Maryland has declined to amend the text of Rule 1.7 to reflect the bright-line rule endorsed by the American Bar Association, this Court has been clear that Rule 1.7 prohibits, in certain circumstances, sexual relationships between attorneys and their clients. The comment to Rule 1.7 provides, in relevant part:

"A sexual relationship with a client, whether or not in violation of criminal law, will create an impermissible conflict between the interests of the client and those of the lawyer if (1) the representation of the client would be materially limited by the sexual relationship and (2) it is unreasonable for the lawyer to believe the lawyer can provide competent and diligent representation. Under those circumstances, client consent after consultation is ineffec-

tive. See also 8.4.[14]»"

Rule 1.7 cmt.

The respondent contends that the hearing judge, in addressing his alleged violation of Rule 1.7, failed to apply this standard in determining whether his sexual relationship with Ms. Mudano created an impermissible conflict of interest. The hearing judge concluded that the respondent violated Rule 1.7 because his relationship with Ms. Mudano "could reasonably have prejudiced [Ms. Mudano's] case." The respondent takes exception to that conclusion, arguing that the hearing judge applied the wrong standard for determining whether he violated Rule 1.7 because "prejudice" is not the legal standard set forth in the Rules, in the Comments or in *Culver.* We disagree with the respondent's interpretation of the hearing judge's conclusion. The hearing judge concluded, in relevant part:

> "The Court finds by clear and convincing evidence that Mr. Hall violated Maryland Rule of Professional Conduct 1.7(b) by engaging in a sexual relationship with Ms. Mudano at a time he was representing her in an employment discrimination suit arising out of a sexual relationship that she maintained with her former supervisor. Notwithstanding the fact that the former relationship with her supervisor may have been consensual, the fact that during the pendency of the litigation, she was carrying on an affair with her attorney could reasonably have prejudiced her case."

In order for the hearing judge to have concluded that the respondent violated Rule 1.7, he would have had to conclude that the respondent's representation of Ms. Mudano on her employment discrimination matter was materially limited by a personal interest and that it was unreasonable for the respondent to believe that, in spite of that personal interest, he could provide Ms. Mudano with competent and diligent representa-

---

**14.** The comment to Rule 8.4, similarly, makes clear that certain sexual behavior may violate the Rule as constituting conduct prejudicial to the administration of justice.

tion. See Rule 1.7. As the excerpt from the hearing judge's opinion makes clear, his use of the word "prejudice" was merely a short-hand way of asserting that the respondent's representation of Ms. Mudano in her employment discrimination action was going to be "materially limited" by his sexual relationship with her. Despite the respondent's argument to the contrary, we will not exalt form over substance in reviewing the findings and conclusions made by hearing judges. *See Attorney Grievance Comm'n v. Lee,* 393 Md. 385, 396, 903 A.2d 360 (2006).

The respondent's representation of Ms. Mudano, in her employment discrimination action, based on the underlying facts, created a conflict of interest. *See e.g., Attorney Grievance Comm'n v. Culver,* 381 Md. 241, 272, 849 A.2d 423, 442 (2004). Ms. Mudano's suit against her employer, Montgomery County, was initiated after she was transferred to a new position. Ms. Mudano was transferred after her supervisors learned that she was having an inappropriate relationship with her married supervisor. Ms. Mudano reached a tentative compromise with the County, but grew increasingly unhappy with the situation. Ms. Mudano sought new counsel and ultimately retained the respondent.

The respondent maintains that the petitioner never presented clear and convincing evidence that either his sexual relationship with Ms. Mudano materially limited his representation or that he was unreasonable in believing that he could provide her with competent and diligent representation. We disagree. Had the respondent's sexual relationship with Ms. Mudano become known to the County, Ms. Mudano's former employer, it is likely that the respondent would have been requested to provide potentially damaging testimony that could have harmed any chance that Ms. Mudano might have had in succeeding on her employment discrimination claim. Indeed, if the County had learned of their sexual relationship, then it likely would have highlighted the fact that Ms. Mudano again was having a sexual relationship with another man that occupied a position of influence over her. Indeed, the County likely would have suggested that Ms. Mudano's sexual rela-

tionship with men occupying such a position of influence was habitual, raising serious questions about the merits of her employment discrimination claim.

The respondent's third exception concerns the hearing judge's conclusion that he further violated Rule 1.7(b) by failing to recognize Ms. Mudano's "fragile, emotional state" and particular vulnerability,[15] because he did not "reasonably investigate the extent" of her emotional problems prior to commencing his romantic relationship with her. The respondent submits that he had only limited information regarding Ms. Mudano's "alleged ongoing or then existing psychiatric infirmity" when their relationship began, and characterizes the judge's finding as "judicial hindsight," not a requirement under any statute, the Maryland Rules of Professional Conduct or case law. The hearing judge's discussion of the respondent's failure to investigate Ms. Mudano's emotional state before engaging in a personal relationship with her was tangential to the finding of a Rule 1.7(b) violation. The hearing judge's conclusion that the respondent violated Rule 1.7(b) was premised on the fact that the respondent's relationship with Ms. Mudano had the potential to prejudice her employment discrimination claim. The respondent's assertions to the contrary are unpersuasive, and, as a result, we overrule the respondent's third exception.

■ In his fourth exception, the respondent submits that his lies to Ms. Mudano about being faithful to her, while damaging to his personal character, should not damage his professional standing and constitute a violation of Rule 8.4(c).[16]

---

15. The respondent takes issue with the hearing judge's conclusion that Ms. Mudano was a "vulnerable person," since no medical testimony was offered to support such a characterization. Ms. Mudano claimed privilege during her deposition and declined to disclose her communications with her therapist, and respondent, therefore, contends he cannot be held accountable for her alleged vulnerability. We, however, do not conclude that this characterization by the judge is clearly erroneous.

16. The respondent acknowledges that the Maryland Rules of Professional Conduct applies to conduct outside the legal realm, but cites the

We agree and shall sustain the respondent's exception. An attorney's lies to his client concerning his romantic relationships with others is a completely different creature than an attorney's lies to his client about matters related directly to his legal representation of that client. In Comment 2 to Rule 8.4, it states that a lawyer should be "professionally answerable" for offenses that demonstrate that an attorney lacks the necessary characteristics to practice law. Rule 8.4 cmt. Comment 2 to Rule 8.4 makes clear that offenses involving "moral turpitude" that are unrelated to an attorney's fitness to practice law are outside the bounds of sanctionable conduct under Rule 8.4. We believe that the respondent's lies to Ms. Mudano were wholly unrelated to the actual practice of law and do not warrant a finding of a Rule 8.4(c) violation. We emphasize, however, that our sustaining of the respondent's exception does not provide any justification whatsoever for an attorney to lie to his clients.

The respondent's fifth exception takes issue with the hearing judge's conclusion that he violated Rule 8.4(d) by having a sexual relationship with Ms. Mudano and exploiting, albeit unwittingly, her fragile emotional state. For support, the respondent reiterates the rule that we articulated in *Attorney Grievance Comm'n v. Link*, 380 Md. 405, 429, 844 A.2d 1197, 1211–12 (2004), where we concluded that conduct, in the private world of attorneys, unrelated to actual litigation situations, is only prejudicial to the administration of justice when "such purely private conduct is criminal or so egregious

following cases to support his contention that no lawyer has ever been disciplined for "lying to a client about matters unrelated to the legal profession or the particular legal matter entrusted to the lawyer": *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 813 A.2d 1145 (2002) (retaining elderly clients' funds while never performing any legal work for those clients); *Attorney Grievance Comm'n v. Painter*, 356 Md. 293, 739 A.2d 24 (1999) (attorney's domestic violence against his wife and child, criminal assault and battery, transportation of handgun); *Attorney Grievance Comm'n v. Lazerow*, 320 Md. 507, 578 A.2d 779 (1990) (misappropriating entrusted funds in a non-legal capacity); and *Attorney Grievance Comm'n v. Silk*, 279 Md. 345, 369 A.2d 70 (1977) (misappropriating club funds while serving as a club officer).

as to make the harm, or potential harm, flowing from it patent...." The respondent submits that his personal relationship with Ms. Mudano was, at all times, consensual and unrelated to the representation, and therefore, his conduct was not so egregious as to prejudice the administration of justice. We disagree.

In *Link*, this Court had to determine whether to uphold a hearing judge's finding that Harold Link, Jr., Esquire, violated Maryland Rules of Professional Conduct 4.4 and 8.4(d) after engaging in rude and abusive conduct toward Customer Service Agents at the Motor Vehicle Administration ("MVA"). *Link*, 380 Md. at 406–08, 844 A.2d at 1198–99. As a result of his previous encounters with the MVA, Link believed that its employees repeatedly violated the Maryland Public Information Act by improperly failing to disclose insurance coverage information to him. Link's practice focused on personal injury cases, and, on May 10, 2002, he went to the MVA to obtain insurance coverage information he needed in one of his personal injury cases. *Id.* at 408, 844 A.2d at 1199. Link intentionally dressed casually because he wanted to find out how "ordinary people" were treated by MVA employees. *Id.* at 408–09, 844 A.2d at 1199. After requesting the insurance coverage information, Link was asked if he was an attorney and to produce identification. *Id.* at 409, 844 A.2d at 1200. Link became verbally abusive toward the Customer Service Agent and used language that was demeaning and rude. This Court dismissed the petition for disciplinary action and reasoned that Link's behavior toward the MVA employees, while admittedly rude and demeaning, "was not during the course of litigation or court proceedings." *Id.* at 427, 844 A.2d at 1210. Thus, while Link was gathering information that could become evidence in a trial, he simply was preparing for litigation rather than actually being involved in litigation. *Id.* at 426–27, 844 A.2d at 1210. The respondent's representation of Ms. Mudano in her ongoing employment discrimination suit here, while simultaneously pursuing a sexual relationship with her, is not the "purely private conduct" that we shielded from disciplinary action in *Link*.

The respondent's behavior has brought disrepute to the legal profession. The respondent, throughout his sexual relationship with Ms. Mudano, was presented with facts that indicated that Ms. Mudano was in a fragile emotional state: she frequently cried in the respondent's office; she continually questioned the respondent about his faithfulness to her; and she informed the respondent that her therapist counseled against continuing her sexual relationship with him. Ms. Mudano's fragile emotional state was clear enough to the respondent that he even acknowledges that he might have described Ms. Mudano as a "nut." Comment 3 to Rule 8.4 provides that an attorney's "[s]exual misconduct or sexual harassment involving colleagues, clients, or co-workers may violate paragraph (d) or (e) ... where coercion or undue influence is used to obtain sexual favor in exploitation of these relationships." We believe that the respondent, in the case *sub judice*, inappropriately continued his sexual relationship with Ms. Mudano while continuing to represent her, despite his knowledge of her fragile emotional state. To be clear, this Court is not requiring that attorneys in Maryland develop an expertise in psychology. But if attorneys take advantage of a client's emotional fragility, as the respondent did here, by having a sexual relationship with that client, this Court will not hesitate to impose disciplinary sanctions. The respondent's conduct, without question, was prejudicial to the administration of justice and has brought disrepute upon the integrity of our profession. Therefore, we overrule the respondent's fifth exception.

The respondent's final exception concerns the hearing judge's finding that he violated Maryland Rule of Professional Conduct 1.4(b). The hearing judge concluded that the respondent's failure to appreciate the negative impact that his personal relationship with Ms. Mudano could have had on his representation of her, coupled with his summary dismissal of Ms. Mudano's questions about the possibility of their relationship having negative legal implications, resulted in the respondent failing to provide Ms. Mudano "with information reasonably necessary to permit her to make an informed decision

regarding the representation." The respondent counters that this Court should reverse the hearing judge's conclusion because it would be unfair for the Court to find that the respondent violated Rule 1.4(b) when he did not even understand or appreciate the fact that his conduct created a potential conflict. In Maryland, it is well settled that an attorney's ignorance of his ethical duties is not a defense in a disciplinary proceeding, although it might have some bearing on the appropriate sanction. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997) (noting that while every attorney is deemed to know the Rules of Professional Conduct, ignorance of those Rules might be viewed as a mitigating factor when the court is considering an appropriate sanction); *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 228, 768 A.2d 607, 618 (2001) (same). We shall overrule the respondent's final exception. The respondent's ignorance here does not absolve him of his responsibility for violating Rule 1.4(b), nor will it be viewed as a mitigating factor. The respondent's previous violation of Rule 1.4 in his 1992 disciplinary action should have made him even more cautious about his actions with Ms. Mudano.

We now must determine the appropriate sanction in this case. We do so, mindful that the goal of attorney discipline is the protection of the public, rather than the punishment of the erring attorney. *See Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 30–31, 922 A.2d 554, 571 (2007); *Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 703, 919 A.2d 669, 677 (2007); *Attorney Grievance Comm'n v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006); *Attorney Grievance Comm'n v. Kreamer,* 387 Md. 503, 534, 876 A.2d 79, 97–98 (2005). Imposing sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed is consistent with, and in fact furthers, that purpose, *Awuah,* 346 Md. at 435, 697 A.2d at 454; *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 483, 671 A.2d 463, 480 (1996); *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994), in that such sanctions promote general and specific deterrence, *Attor-*

*ney Grievance Comm'n v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993); *Attorney Grievance Comm'n v. Berger,* 326 Md. 129, 131, 604 A.2d 58 (1992) *(citing Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991)), protect the integrity of the legal profession, *Attorney Grievance Comm'n v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001), further the public's confidence in the legal profession, *Attorney Grievance Comm'n v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004); *Attorney Grievance Comm'n v. Stein,* 373 Md. at 533, 819 A.2d at 375 (2003); *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002), and take account of the facts and circumstances of each particular case, including any mitigating factors. *See Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998). Given the importance we place on maintaining the public's confidence, "the attorney's prior grievance history . . . the attorney's remorse for the misconduct, and the likelihood of the conduct being repeated" are relevant considerations, as well. *Attorney Grievance Comm'n v. Post,* 379 Md. 60, 71, 839 A.2d 718, 724–25 (2003). As to the latter consideration, the likelihood of repetition, we have recognized that conduct, although an aberration, can be so egregious as to warrant the imposition of a significant sanction. *See Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 762, 736 A.2d 339, 344 (1999) (offering *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 263, 619 A.2d 100, 105 (1993), as an example of such conduct).

The petitioner recommends that the respondent be disbarred in light of both the nature and the number of charges brought by the Commission. The respondent, on the other hand, believes that disciplinary proceedings are appropriate only for his admitted violation of Rule 1.3 in failing to file a timely Notice of Appeal. Moreover, the respondent believes that a reprimand is the proper sanction for his violation of Rule 1.3. The respondent contends that the conclusion drawn by the Circuit Court in his malpractice suit, that the outcome

of the case would have been the same regardless of whether the appeal was timely noted, is a mitigating factor that this Court must consider before imposing sanctions.

As indicated, our paramount objective is the protection of the public. The hearing judge's findings of fact show that the respondent initiated a personal relationship with his client. The respondent claims to have had only "limited information" about Ms. Mudano's emotional history when their personal relationship commenced: that she "had been in supportive therapy at different times for feelings of depression and/or anxiety," that she "first entered therapy at the time that her marriage ended in 1992, that she "reacted to the adverse circumstances following the end of her romantic and sexual relationship with . . . her [former] supervisor," and thereafter, harbored "suicidal thoughts" and was hospitalized. These facts certainly support the hearing judge's conclusion that the respondent, who had sufficient reason to know, failed to appreciate that Ms. Mudano was undergoing some form of emotional instability. The respondent testified that he acknowledged and regretted the pain he caused to his client and her family. Nevertheless, he maintains that his sexual relationship with her, which he initiated, reflected negatively only on his personal choices and at no time interfered with his representation of her. His failure to acknowledge the fact that his sexual relationship with Ms. Mudano interfered with his professional representation of her is not at all comforting to the members of this Court. Furthermore, the respondent's previous experience with the Attorney Grievance Commission and this Court only heightens our concern with respect to the respondent's judgment or lack thereof. While we acknowledge that his previous sanction, an indefinite suspension with the right to reapply not less than 18 months from the date of the filing of the opinion, in 1992, did not result from any allegation of sex with a client, we cannot ignore that the sanction was imposed, in part, due to several violations of Rule 8.4(d). We believe, under the circumstances of the case, that the appropriate sanction in this matter is an indefinite suspension. The respondent is ordered indefinitely suspended from

the practice of law. He may reapply for readmission not less than 24 months after the effective date of this Court's order of suspension.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RALPH EDWARD HALL, JR.**

Dissent by HARRELL, BATTAGLIA, and RAKER, JJ.

The Majority opinion is fine up to the point of its evaluation and assessment of sanction. For the protection of the public, Judges Harrell, Battaglia, and Raker would disbar the Respondent.