*Attorney Grievance Commission v. John Mark McDonald*, Misc. Docket AG No. 38, September Term, 2012

**ATTORNEY MISCONDUCT – DISCIPLINE – DISBARMENT –** Court of Appeals disbarred former Deputy State's Attorney who, due to an infatuation with a co-worker, used his position while in office to enter *nolle prosequi* dispositions for five traffic citations as personal favors to the co-worker, facilitated the co-worker taking leave to which she was not entitled, interfered with a criminal prosecution of the co-worker for embezzling funds from the State's Attorney's Office, and deleted protectively emails from the co-worker's former work computer after her termination. Such conduct violated Maryland Lawyers' Rules of Professional Conduct 8.4(a), 8.4(c), and 8.4(d).

IN THE COURT OF APPEALS OF
MARYLAND

Misc. Docket AG No. 38

September Term, 2012

---

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JOHN MARK MCDONALD

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

---

Opinion by Harrell, J.

---

Filed: February 21, 2014

John Mark McDonald was admitted to the Bar of this Court on 13 December 1995. After serving as an Assistant State's Attorney in Kent, Talbot, and Queen Anne's Counties, McDonald was appointed Deputy State's Attorney for Queen Anne's County in January 2003. On 12 September 2012, the Attorney Grievance Commission (the "Commission"), acting through Bar Counsel, filed against McDonald a Petition for Disciplinary or Remedial Action (the "Petition"), pursuant to Maryland Rule 16-751(a)(1). The Petition alleged that McDonald engaged in a pattern of misconduct related to an "inappropriate relationship" between him and Melissa Knotts, the former office manager for the State's Attorney's Office for Queen Anne's County (the "Office"), by using improperly his position to "fix" traffic citations issued to Knotts as a personal favor to Knotts, facilitating knowingly Knotts taking leave to which she was not entitled, interfering with the criminal investigation and prosecution of Knotts for embezzling funds from the Office, and deleting (without proper authority) emails from Knotts's former work computer the day after her employment was terminated. Based on the alleged pattern of misconduct, the Petition charged McDonald with violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.4(a),[1] 8.4 (b),[2]

---

[1] MLRPC 8.4(a) makes it professional misconduct to "violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[2] MLRPC 8.4(b) makes it professional misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

8.4(c),[3] and 8.4(d).[4]

The matter was referred to a judge who was specially assigned to the Circuit Court for Queen Anne's County for hearing and the filing of findings of fact and proposed conclusions of law. An evidentiary hearing, spanning five non-consecutive days of testimony and argument, commenced in the Circuit Court on 10 January 2013 and concluded on 31 January 2013.

For reasons explained here, based on the evidence received during the evidentiary hearing, our due consideration of the hearing judge's Memorandum of Findings of Fact and Proposed Conclusions of Law, and the Exceptions and Recommendations for Sanctions of the parties, we disbar McDonald from the practice of law in Maryland.

**I.**

**A. The Hearing Judge's Findings of Fact**

The hearing judge filed a Memorandum of Findings of Fact and Proposed Conclusions of Law on 16 April 2013. We summarize the hearing judge's findings of fact based on the categories of misconduct alleged by Bar Counsel.

*1. Ticket Fixing*

Bar Counsel's admitted evidence (credited by the hearing judge) reflected that, on five occasions between December 2008 and April 2011, McDonald entered (or arranged

---

[3] MLRPC 8.4(c) makes it professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] MLRPC 8.4(d) makes it professional misconduct to "engage in conduct that is prejudicial to the administration of justice."

for the entry of) dispositions of *nolle prosequi* for traffic citations issued to Knotts. During their respective consecutive tenures as the State's Attorney for Queen Anne's County, Frank M. Kratovil, Jr. (now a judge of the District Court of Maryland) and Lance G. Richardson maintained the same policy regarding motor vehicle citations or criminal charges involving employees of the office, which policy required immediate self-reporting by any employee who received a citation or was charged, so that the State's Attorney could determine whether the use of a special prosecutor was necessary, and "did not permit an attorney from abusing the office he or she holds by entering a *nolle prosequi* on charges or citations as a favor to employees . . . ." Although McDonald cross-examined Richardson regarding exceptions to this policy against showing favoritism to employees, each of the instances brought up by McDonald were deemed to be "vastly different than what occurred with the citations issued to Knotts." Any claim by McDonald that the Office had a policy of showing favoritism to employees in regards to citations or charges was found by the hearing judge to be "without merit." McDonald's explanation that he entered, or caused to be entered, *nolle prosequi* for Knotts's citations in exchange for information she provided about ongoing drug investigations, in conformity with a policy or practice of the Office to encourage such exchanges, was not credible. In an email McDonald sent to Knotts on 29 April 2010, he listed favors he performed for her, including "[f]ive fixed tickets." The hearing judge found ultimately that "each *nolle prosequi* entered by the Respondent or at his behest for traffic citations issued to Knotts was done as a personal favor to her and without any

legitimate business purpose." Based on these findings, the hearing judge concluded, by clear and convincing evidence, that McDonald violated MLRPC 8.4(a) and (d).

*2. Interference with the Prosecution of Knotts for Embezzlement*

The hearing judge considered Bar Counsel's evidence regarding McDonald's alleged interference with Knotts's embezzlement prosecution by looking: first, at his alleged attempts to intimidate or corrupt the State's witnesses against Knotts; next, at McDonald's alleged attempts to influence Steven Trostle, the Special Prosecutor assigned to prosecute the case against Knotts; and, finally, at McDonald's alleged obstruction of justice regarding the Knotts prosecution.

Attempts to intimidate or corrupt the State's witnesses

The hearing judge made three factual findings regarding Bar Counsel's evidence tendered to prove McDonald's alleged attempts to intimidate or corrupt the State's witnesses against Knotts. The first finding was that McDonald's choice to resign from the Office shortly before a murder trial he was scheduled to prosecute was not an attempt to influence Richardson by forcing him to choose between conceding to McDonald's wishes regarding the Knotts prosecution or being left in the lurch on the murder trial. The hearing judge found credible McDonald's explanation that he left the Office as Deputy when he did because he felt he could not return to the Office if he testified in support of Knotts's anticipated Motion to Enforce Plea Agreement in the criminal case arising from her theft from the Office. Second, the judge found that certain text messages sent by McDonald to Richardson did not rise to the level of a threat. Third, she resolved that statements made by McDonald to Robert Penny, an investigator for the Office, and

-4-

April Pyle, an administrative assistant for the Office, that the Office would "go down" if Knotts "went down," were not threats, but were efforts to protect the Office from looking bad if Knotts's defense attorney filed the anticipated Motion to Enforce Plea Agreement. The hearing judge concluded that "[a]lthough [McDonald] was clearly trying to influence the outcome of Knotts's criminal case and acted inappropriately in his quest to do so, the testimony does not establish that he tried to intimidate or corrupt Richardson and Penny."

## Attempts to influence Trostle

The hearing judge reached a similar outcome regarding the evidence surrounding McDonald's interactions with Trostle. In response to Bar Counsel's allegations that McDonald urged Trostle to be lenient with Knotts and attempted to influence Trostle's prosecutorial decision-making, the hearing judge concluded that "although [McDonald] attempted to influence the outcome of the Knotts prosecution, his actions in that regard— however inappropriate as they may have been—do not rise to the level of attempting to intimidate or corrupt an officer of the court."

## Alleged Obstruction of Justice

The hearing judge made the following factual findings concerning whether McDonald's actions regarding the embezzlement prosecution of Knotts constituted obstruction of justice. Promptly following McDonald's meeting with Richardson and Penny on the day Knotts confessed to the embezzlement, at which meeting he agreed not to involve himself in Knotts's prosecution, McDonald: (1) told Penny there was a problem with the *Miranda* advisements Penny gave Knotts; (2) called Penny to ask whether criminal charges would be filed and, when Penny answered in the affirmative,

"asked Penny to call Richardson to dissuade him from filing charges and went so far as to suggest that the county's human resources office be contacted and a meeting arranged to resolve the issues without the necessity of filing criminal charges"; and, (3) asked about the amount of restitution due. On 6 July 2011, the day that criminal charges were filed against Knotts, McDonald called repeatedly the police sergeant who was on his way to serve Knotts with the criminal summons and also emailed Richardson to ask what would happen to the charges if restitution were paid immediately (implying that he thought Knotts could pay it right away). Between July 6 and July 15 of 2011, McDonald, while employed still as the Deputy State's Attorney, asked R. Stewart Barroll, Esq., a local attorney, to represent Knotts in the embezzlement case. McDonald stated that he would see to it that any fees related to the representation would be paid. McDonald also represented to Barroll that a plea agreement had been reached already and, thus, his representation of Knotts would more than likely involve only the sentencing.

From 15 July 2011 until 8 September 2011 (the day McDonald resigned), McDonald had "daily or near-daily communications" with Richardson, Penny, and Pyle about the Knotts prosecution. "By way of example, [McDonald] sought information about the status of the case, questioned how the case would proceed and how the matter was being handled by the Special Prosecutor." McDonald contacted Trostle to ask, among other things, if he would be seeking an indictment of Knotts and, if so, whether McDonald could be contacted at that time so he could assist Knotts in surrendering herself and being released as soon as possible. After learning that Trostle was considering an indictment, McDonald attempted to persuade Richardson and Penny to

-6-

intervene and to persuade Trostle not to indict or, alternatively, appoint a new Special Prosecutor to the case. McDonald sent text messages later to Richardson suggesting that the payment of restitution should resolve the case, that further prosecution was mean-spirited, and that the indictment sought by Trostle would be "over the top."

The hearing judge found that "during this same time period, [McDonald] was in constant contact with Knotts and her criminal defense attorney." McDonald "requested that Barroll have a subpoena issued for McDonald to testify as a character witness." He also suggested possible defenses to Barroll. Additionally, during a pre-trial conference on 21 October 2011, McDonald called Trostle, after the Special Prosecutor refused to speak to McDonald on an earlier call on Barroll's cell phone, and persisted in asserting that Richardson and Knotts reached previously a binding plea agreement.

Addressing McDonald's assertion that the prosecution of Knotts violated an enforceable plea agreement reached with her on the day she confessed the embezzlement to Richardson and Penny, the hearing judge found that McDonald's "conduct in actively and intentionally interfering in the Knotts prosecution is not mitigated or justified by his belief that an enforceable plea agreement to a misdemeanor charge had been reached between Richardson and Knotts," because, "[e]ven if a plea agreement had been reached, any attempt to enforce the plea agreement rightly belonged with Knotts's defense attorney, not [McDonald]." The judge also found that "no justification [existed] for [McDonald] involving himself in the matter due to his belief that the amount of restitution paid was more than it should have been. That, again, was a matter to be addressed by Knotts's defense counsel, not [McDonald]." She concluded that

-7-

McDonald's "actions ran afoul of what was appropriate behavior for a senior member of [the State's Attorney's Office]—an office that coincidentally was the victim of Knotts's embezzlement," and that "[t]here is no getting around the fact that the Respondent's personal feelings for Knotts clouded his judgment and caused him to inappropriately involve himself in her prosecution."

*3. Alleged Falsification of Timesheets and Abetting a Fraud*

Bar Counsel's evidence (credited by the hearing judge) revealed that the Office required employees to submit timesheets, on a bi-weekly basis, indicating the amount of hours worked and leave taken. Knotts would submit all employees' timesheets to Richardson at the end of each period for his approval and signature. In early 2011, Richardson discovered inaccuracies in Knotts's timesheets. When Richardson confronted Knotts about the inaccuracies, she indicated that McDonald "donated" non-sick leave to her. As it turned out, McDonald and Knotts devised an arrangement in which McDonald would complete and sign two timesheets on his behalf for a single pay period, with one sheet reflecting his actual hours worked and another indicating that he had used non-sick leave on certain days. Knotts would submit the second timesheet if she chose not to work on a day in which McDonald indicated that he took leave. For that same time-period, Knotts would complete her own timesheet showing that she had worked on days when she had not worked in fact. When Richardson discovered their arrangement, he told McDonald and Knotts that he did not approve of it, and, to his knowledge, the practice was not repeated again. The hearing judge concluded from this that the Commission did

not prove by clear and convincing evidence that McDonald falsified timesheets, violated a county policy, or abetted Knotts in committing a fraud.

*4. Alleged Unauthorized Access by McDonald to Knotts's Office Computer*

The hearing judge made the following factual findings regarding the allegations of McDonald's unauthorized access to Knotts's office computer. McDonald accessed Knotts's computer the day after her employment was terminated and began deleting personal emails. Richardson confronted McDonald in the process, told him that Knotts's former office was a crime scene, and requested that McDonald leave. After informing Richardson he had been deleting personal emails and moving them to the "trash bin" on her computer, McDonald apologized and departed the office. The hearing judge inferred also that McDonald "did not access [Knotts's] computer to delete or change any documents related to the office's bank accounts or financial ledgers" because the testimony showed that Knotts kept the financial records in hard-copy, not electronically, a fact widely known in the Office.

The hearing judge rejected Bar Counsel's arguments that: (1) because McDonald was subpoenaed as a character witness for Knotts in her criminal case, the email communications between them could have been relevant in her case; and, (2) her emails could contain information regarding her spending habits, which would be relevant to the investigation:

> The court notes that [McDonald] accessed Knotts's computer the day after her employment was terminated—there was no evidence that [McDonald] knew at that time that he would be subpoenaed as a character witness in a case for which charges had not as yet been filed. Secondly, Knotts confessed her theft to Richardson and Penny

the day before. Thirdly, and perhaps most importantly, no evidence was presented that the office employees, including [McDonald], were put on notice that her office and/or her computer was, in fact, a designated crime scene. There was credible evidence presented that the attorneys in the office would, on a fairly regular basis, have access to Knotts's computer to retrieve templates for forms and other documents necessary for their work as Assistant State's Attorneys. Although [McDonald's] reasons for entering her office on the day in question were admittedly for a different purpose, it has not been satisfactorily proven to the court that the access to her computer was wholly impermissible.

The hearing judge concluded that "[a]lthough [McDonald's] decision to enter Knotts's office and to delete personal emails from her office computer may not have been the wisest decision," the evidence did not prove sufficiently that McDonald's "actions amounted to criminal behavior as alleged by [Bar Counsel]."

## B. The Hearing Judge's Proposed Conclusions of Law

The hearing judge concluded that Bar Counsel proved by clear and convincing evidence that McDonald's ticket fixing and "unjustified and intentional interference with the prosecution of Knotts's criminal case" were prejudicial to the administration of justice and, thus, violated MLRPC 8.4(d). Based on that conclusion, the hearing judge also found that McDonald violated MLRPC 8.4(a). As to the charged violations of MLRPC 8.4(b) and 8.4(c), the hearing judge concluded that the Commission did not prove by clear and convincing evidence that McDonald's conduct rose "to the level of obstruction, corruption or criminal behavior," or that it constituted "a finding of dishonesty, fraud, deceit, or misrepresentation."

## II.

### A. Our Standard of Review

We recently explained our standard of review applicable to attorney disciplinary

cases:

> This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland. We review the hearing judge's conclusions of law under a non-deferential standard. The hearing judge's findings of fact will be deemed correct if (1) they are not clearly erroneous, or (2), at the Court's option, if neither party filed exceptions to them. If determined to be established, the findings of fact are then used to determine the legal propriety of the legal conclusions of law and the appropriate sanction. We must determine whether there is sufficient evidence to support the hearing judge's legal conclusions, by a clear and convincing standard of proof.

*Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 334, 68 A.3d 862, 867-68 (2013)

(internal citations and quotation marks omitted).

### B. The Parties' Exceptions

Both parties filed exceptions to the hearing judge's Findings of Fact and Proposed

Conclusions of Law. Bar Counsel takes no exceptions to the hearing judge's factual

findings, but raised four exceptions to the proposed conclusions of law. McDonald raised

initially fourteen numbered Exceptions, and later filed four numbered Supplemental

Exceptions, challenging several of the hearing judge's factual findings, procedural issues

arising before, during, and after McDonald's merits hearing, and the hearing judge's

proposed conclusions of law as to his having violated Rules 8.4(a) and 8.4(d).[5]

---

[5] On 15 May 2013, Bar Counsel filed a Motion to Strike a portion of McDonald's original Exception numbered 2, regarding material that was sealed by the hearing judge, and original Exception numbered 3, in its entirety, which concerns statements made

(continued…)

Additionally, each party filed responses to the other party's exceptions. We address first McDonald's exceptions to the hearing judge's factual findings, before addressing, in turn, McDonald's exceptions concerning procedural matters and both parties' exceptions to the proposed conclusions of law.

*1. McDonald's Exceptions to the Factual Findings*

McDonald's original Exceptions numbered 5, 6, and 8 through 11 contest factual findings of the hearing judge. Underlying our analysis of those Exceptions is the "fundamental principle that the factual findings of the assigned judge in an attorney disciplinary proceeding 'are *prima facie* correct and will not be disturbed on review unless clearly erroneous.'" *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999) (quoting *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 474 (1996)). A hearing judge's factual finding is not clearly erroneous "[i]f there is any competent material evidence to support [it]." *YIVO Inst. for Jewish Research v. Zaleski*, 386 Md. 654, 663, 874 A.2d 411, 416 (2005). We conclude that each of the Exceptions, for the reasons set forth below, shall be overruled.

(…continued)
during the peer review process. The Commission filed a second Motion to Strike, on 20 May 2013, arguing that portions of interrogatories attached to McDonald's Response to Bar Counsel's Exceptions and Recommendation for Sanctions, which are not a part of the record of this case, should be stricken. In an Order filed on 30 May 2013, we deferred ruling on those Motions and McDonald's Responses to the Motions to Strike. Having given due consideration to the arguments of both parties, Bar Counsel's Motions are granted.

McDonald's fifth and sixth Exceptions concern the hearing judge's factual findings regarding the entry of *nolle prosequi* dispositions by McDonald as to Knotts's motor vehicle citations. In his fifth exception, McDonald argues that the hearing judge erred by finding that the *nolle prosequi* entries were personal favors, and without a legitimate business purpose. In the first part of Exception numbered 5, McDonald claims that the hearing judge misconstrued the evidence by finding that Richardson and Kratovil did not have reason to believe Knotts was a confidential source of information. According to McDonald's interpretation of the evidence, Kratovil and Richardson testified merely that they had no knowledge whether she was a confidential source of the Office. Respondent continues that Richardson's and Kratovil's lack of knowledge as to whether Knotts was a confidential source was not inconsistent with McDonald's assertion that he entered *nolle prosequi* dispositions for her benefit in exchange for information because, in his position as a Deputy State's Attorney in charge of illegal drug prosecutions, McDonald worked with confidential sources of whom other people in the Office, including the two State's Attorneys, were unaware.

We do not agree that the hearing judge misconstrued the evidence. Kratovil was asked whether he had reason to believe that Knotts was a confidential source. He replied "I had no knowledge of that." Kratovil testified also that he would have wanted to know if one of his employees was a confidential source. Similarly, Richardson testified that he "would absolutely need knowledge" of the favorable disposition of public charges of one of his employees because of the potential repercussions. It would be McDonald's

responsibility, as his Deputy State's Attorney, he continued, to inform him of any such dispositions. The witness maintained that the notion of Knotts having been a confidential source of information is "absolutely absurd." Although McDonald testified, as outlined in his relevant Exception, that he had confidential sources of whom the others were unaware, the only testimony to support his assertion that Knotts was one of those sources, and that he entered *nolle prosequi* dispositions for five of her citations in exchange for providing information on drug investigations, was Knotts's arguably self-serving testimony. Knotts testified on direct-examination that she provided information in exchange for the *nolle prosequi* entries; however, on cross-examination, she admitted that she did not provide any information with the intent that McDonald would enter a *nolle prosequi* on her behalf, and that he never told her that he would enter a *nolle prosequi* for her only if she provided information on drug investigations. We find no error in the hearing judge's conclusion that the evidence did not support McDonald's claim that his *nolle prosequi* entries were made in exchange for information from Knotts. The testimony of Richardson and Kratovil on that subject was found to be more credible than McDonald's and Knotts's testimony.

In the latter half of his fifth exception and in his sixth exception, McDonald argues that the hearing judge committed clear error and abused her discretion by finding credible the testimony of Richardson regarding the propriety of the entries of *nolle prosequi* by McDonald on Knotts's behalf. McDonald's argument consists mostly of meritless finger-pointing and personal attacks on Richardson, propped-up by snippets of testimony (devoid of context) and the reiteration of arguments that were, in our view, rejected

-14-

properly by the hearing judge.  The lack of merit in McDonald's argument is highlighted by his assertion that it was clear error for the hearing judge to find credible Richardson's testimony on the subject of the Office policy or practice regarding *nolle prosequi* dispositions, in part, because "it is the only matter of substance that the trial court found Mr. Richardson testified credibly about."  The latter part of McDonald's assertion is not only disingenuous,[6] it would be unavailing in support of the claim of clear error, even if it were true, because, in assessing credibility, the hearing judge "was entitled to accept-or reject-all, *part*, or none of the testimony of any witness."  *Attorney Grievance Comm'n v. Walter*, 407 Md. 670, 678, 967 A.2d 783, 788 (2009) (emphasis added); *see also Attorney Grievance Comm'n v. Usiak*, 418 Md. 667, 687, 18 A.3d 1, 13 (2011) ("The judge is at liberty to pick and choose what evidence to believe and what evidence to disbelieve, as well as what weight to give (or not) to any piece of evidence.").  In other words, the hearing judge could find permissibly Richardson credible on the subject of the *nolle prosequis*, even if the judge found that Richardson's testimony on all other subjects was not credible.  We overrule Respondent's Exceptions numbered 5 and 6.

---

[6] The subject of the *nolle prosequis* is the only section of the hearing judge's Memorandum Opinion that comments directly on the credibility of any part of Richardson's testimony.  Although the hearing judge found that some of the arguments posed by Bar Counsel, which were based in part on the testimony of Richardson, were not supported by the quantum of evidence necessary ("clear and convincing"), in the hearing judge's view, nowhere in those portions of the Memorandum does the hearing judge attribute the shortfalls of Bar Counsel's evidence to a lack of credibility on the part of Richardson.  McDonald's attempt to paint the hearing judge's assessment of Richardson's testimony with a different brush is only one of many examples of artistic liberties taken by him with the facts and circumstances of this case.

In his Exception numbered 8, McDonald argues that "[t]he Court's finding that [McDonald] called an officer repeatedly while the officer was on his way to serve a summons is not supported by the evidence and is, thus, clear error." Respondent submits the following assertions in support of his clear error argument: (1) Bar Counsel offered no evidence that McDonald attempted to prevent Sergeant Bruce Layton ("Sgt. Layton"), the officer at issue, from serving a criminal summons on Knotts; (2) Bar Counsel did not call Sgt. Layton as a witness; (3) Bar Counsel presented no evidence that McDonald knew Sgt. Layton was serving a summons on Knotts; (4) Robert Penny's testimony that Sgt. Layton showed him McDonald's name as the caller identification for a single phone call was insufficient support for the hearing judge's factual finding; and, (5) Sgt. Layton is the only person who could testify concerning the number of calls he received and whether the contact number in his phone's memory associated with McDonald "is a number belonging exclusively to [McDonald]." Declaring victory, McDonald concludes that the hearing judge's finding is "based upon nothing more than speculation and conjecture."

We disagree with McDonald's assessment of the evidence. The hearing judge's factual finding is based apparently upon the following testimony elicited from Penny concerning his trip with Sgt. Layton, on 6 July 2011, to serve a criminal summons on Knotts:

> Sergeant Layton and I got in his unmarked police cruiser and we began heading north and we were probably in the car three to five minutes and in those police cars, Your Honor, the center console is, basically, a metal box.

It's not like your standard luxury car, per se. It's like a metal box and as we're heading out of town, I can hear what sounded like his phone vibrating and it would go through a ring cycle and then it would stop and then it would immediately start again. It went through this cycle three, four, five times so I made a comment to Sergeant Layton do you need to get that. Sergeant Layton . . . grabbed the phone. I observed Sergeant Layton look at it and then he turned the screen to me so I could see it and I don't know how he had the contact listed, if it was just John Mark or John Mark McDonald, but I could clearly draw the conclusion that it was Mr. McDonald ringing the phone. So I, basically, told Sergeant Layton we're continuing with the mission at hand and just keep going.

It is also worth noting Penny's additional testimony that McDonald called him (Penny) earlier on 6 July 2011 to ask if criminal charges would be filed that day against Knotts and became upset when Penny responded in the affirmative. Respondent proceeded to make several requests to prevent the charges from being filed, with which either Penny declined to, or could not, comply.

In light of Penny's testimony, the bases for McDonald's argument that the hearing judge's finding was in clear error suggests that McDonald fails to recognize "the use of inferences in the fact-finding process," in which judges, when acting as the finder of fact, "routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts." *In re Gloria H.*, 410 Md. 562, 577, 979 A.2d 710, 718 (2009) (quoting *Robinson v. State*, 315 Md. 309, 318, 554 A.2d 395, 399 (1989)). The hearing judge, acting as the fact-finder in this case, could infer rationally that the repeated calls received by Sgt. Layton's phone, occurring one after the other, all came from the same caller, and that the number associated with McDonald's name in Sgt. Layton's phone's memory was being used, in fact, by

McDonald, particularly in light of McDonald's attempt earlier that day (not to mention on other occasions) to intervene in the criminal charging process of Knotts.

Exception Numbered 9

McDonald's Exception numbered 9 challenges the hearing judge's finding that "[a]fter the Knotts case was assigned to Trostle, Richardson removed himself from any further control over the prosecution" of Knotts. McDonald argues that the hearing judge's finding is "completely contradicted by the evidence and testimony in this case," and relies on three pieces of evidence and testimony in support of this argument.

First, McDonald refers to an email sent by Richardson to Trostle, on 19 September 2011, asking him to agree not to oppose probation before judgment if Knotts agreed not to say harmful things about the operation of the Office under Richardson's tenure. McDonald posits that this email contradicts Trostle's testimony that Richardson "stood down" and did not influence thereafter the Special Prosecutor. Furthermore, McDonald asserts that the original plea offer from Trostle, according to the testimony of Knotts's attorney (Barroll), did not include an offer of probation before judgment, and that at that time Knotts was considering filing a Motion to Enforce Plea Agreement that "would have included evidence that, not only did Mr. Richardson violate the plea agreement, but he knowingly overcharged the restitution owed in the case."

The email from Richardson to Trostle does not support a determination of clear error. First, the text of the email indicates that Richardson floated the probation before judgment idea to Trostle as a suggestion, not as a demand, and then only if Knotts's attorney requested it. Second, McDonald points to no evidence in the record to

-18-

demonstrate that Richardson's suggestion influenced Trostle actually. Third, whether Knotts was planning to file a particular motion in her criminal case, and what the factual allegations in that motion would be, have no bearing on our consideration of the present case.

The second piece of evidence McDonald relies on is what he alleges to be testimony that Richardson contacted McDonald, Michael Pappafotis, and Jane Miller[7] in an attempt to persuade each of them not to testify on Knotts's behalf regarding the alleged plea agreement. Yet again, McDonald advances a very liberal interpretation of the actual testimony in this case. As to Pappafotis, Richardson testified, in the portion of the transcript McDonald refers us to, that he did call Pappafotis, but denied that he did so in an effort to persuade him not to testify on behalf of Knotts. Additionally, Pappafotis testified, in response to McDonald's counsel asking if Richardson tried to dissuade him from testifying, "I wouldn't say that [Richardson] tried to dissuade me." As to Miller, McDonald refers us to portions of the transcript where she testified that Richardson called her and, among other things, "had a discussion with [her] about how in Mrs. Knotts's case that the plea wasn't really a plea, and that [Miller] must have misunderstood." Moreover, Richardson testified "No" in response to McDonald's counsel questioning him about whether he tried to dissuade Miller from testifying. McDonald does not point to evidence in the record suggesting that Richardson tried to

---

[7] Michael Pappafotis and Jane Miller are attorneys who were called as witnesses by McDonald to testify regarding the alleged binding plea agreement between Richardson and Knotts occurring on the day of Knotts's confession that she embezzled money from the Office.

dissuade McDonald from testifying. The testimony McDonald refers us to does little to convince us that the hearing judge's finding that Richardson relinquished control over Knotts's prosecution was "completely contradicted" by the evidence in this case.

Finally, McDonald relies on his own testimony that Richardson directed Penny to send an email to Trostle asking that the Knotts case stay in the District Court (as opposed to the Circuit Court), and that the email must have been removed from the State's Attorney's file that was subpoenaed. This testimony does not demonstrate that the hearing judge's finding is clear error.

Competent and material evidence was before the hearing judge on which to find that Richardson surrendered control of Knotts's prosecution to Trostle. Bar Counsel elicited testimony from Trostle that, although Richardson had communications with him, Trostle, as the Special Prosecutor, had control over the case and was not influenced by Richardson. Accordingly, the relevant finding was not clearly erroneous. Respondent's Exception numbered 9 is overruled.

### Exception Numbered 10

McDonald argues in this Exception that the hearing judge lacked evidence from which to find that McDonald "contacted Steven Trostle during the first week of August of 2011 . . . [and] told Trostle that [McDonald] would be receiving a subpoena to testify [requested by Knotts's lawyer so that he could be a character witness on Knotts's behalf]," because neither Trostle nor McDonald, the only two parties to the conversation, testified to that as a fact. McDonald contends the evidence shows that McDonald "was giving Mr. Trostle the courtesy of letting him know that he may be a character witness

-20-

for Ms. Knotts," and that a subpoena was not issued until after Trostle opined that it would be improper for McDonald to be a character witness for Knotts. The transcript of Trostle's testimony, however, reveals the following colloquy between Trostle and McDonald's counsel concerning Trostle's first conversation with McDonald:

Q      Okay. Can you place that first conversation in time?

A      I believe it was in the first week of August [2011].

Q      So it was after you got this August 2nd letter, if you got it?

A      I can't say. Keep in mind, that letter may have just been provided to me, not so much by mail to my office, but it may have been printed, put in the file and sent to me with the file. I believe I received the file, also, in that first week of August.

Q      At that point, he did tell you that he was being subpoenaed as a character witness on [Knotts's] behalf, is that correct?

A      When you say he, you're referring to your client?

Q      Mr. McDonald.

A      He did indicate that, I believe.

This testimony undercuts McDonald's recollection of the evidence, and demonstrates that the hearing judge's finding was not clearly erroneous. This Exception is overruled.

Exception Numbered 11

McDonald argues that the evidence contradicts the hearing judge's finding that "at all relevant times," during the investigation and prosecution of Knotts, McDonald was Deputy State's Attorney. We disagree again with McDonald's interpretation of the evidence. Although it is correct that some of the events relevant to McDonald's misconduct in relation to the Knotts case occurred after his last day working physically in

the State's Attorney's Office (on 8 September 2011), an email from an employee of that Office's Human Resources Department, which was admitted into evidence, confirms that McDonald's actual separation date was pushed back until 1 December 2011, after the relevant events took place (Knotts pled guilty and was sentenced on 21 October 2011). Accordingly, the hearing judge's finding was not clearly erroneous. This Exception is overruled.

### 2. McDonald's Exceptions Concerning Procedural Matters

#### Exception Numbered 1

In his opening Exception, McDonald argues that the Petition for Disciplinary or Remedial Action filed by Bar Counsel should be dismissed because "no evidence was introduced that establishes Bar Counsel had the authority to bring this action." McDonald grounds this argument on his general denial, in his Answer to the Petition, that Bar Counsel was authorized or directed by the Commission to bring the case against him, and that Bar Counsel failed to prove such authority at trial. McDonald relies on *In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968), for the proposition that "[d]ue process applies to attorney disciplinary proceedings." That case, however, does not advance McDonald's position. *Ruffalo* stands for the proposition that an attorney facing disbarment is "entitled to procedural due process, which includes fair notice of the charge." 390 U.S. at 550, 88 S. Ct. at 1226, 20 L. Ed. 2d 117. There is no question that the Petition was sufficient to put McDonald on notice of the charges against him. McDonald offers no legal authority supporting the proposition that a lack of demonstrative proof regarding Bar Counsel's actual authority to file the Petition

constitutes a deprivation of procedural due process. Bar Counsel averred in the Petition that it was filed upon direction from the Commission to Bar Counsel on 28 June 2012, pursuant to Maryland Rule 16-751(a)(1). At a minimum, this established apparent authority and a presumption of propriety. We agree with Bar Counsel that McDonald's mere denial of the averment does not overcome the presumption nor does it establish affirmatively that Bar Counsel lacked authorization from the Commission to file the petition. Accordingly, McDonald's Exception is overruled.

Exception Numbered 2 and Like Numbered Supplemental Exception

McDonald argues here that the hearing judge committed clear error by granting Bar Counsel's Motion in Limine prohibiting McDonald from "cross-examining Petitioner's witnesses regarding bias." McDonald complains that he was prejudiced by not being allowed to conduct cross-examination (or admit impeachment evidence) concerning: (1) complaints filed with the Commission against other attorneys; (2) alleged extra-marital affairs of Bar Counsel's witnesses; (3) Richardson's and Penny's alleged motive to lie for political reasons; and (4) Richardson's and Penny's alleged interference with McDonald's private practice clients and/or potential clients. McDonald seeks remand of the case to re-open the records for further cross-examination and impeachment evidence.

McDonald's Exception lacks merit for four reasons. First, neither Bar Counsel's Motion in Limine nor the hearing judge's ruling on that Motion effected a blanket exclusion, as McDonald suggests, on McDonald's admission of evidence regarding bias of Bar Counsel's witnesses. The hearing judge ruled that McDonald would not be

permitted to offer or elicit the following evidence: (1) testimony regarding the alleged extra-marital affairs of any witnesses, (2) testimony regarding any person's motivation for filing a grievance with the Commission, and (3) information regarding McDonald's peer review hearing. The hearing judge found that these areas of possible inquiry were not relevant, but stated that other issues concerning the credibility of Bar Counsel's witnesses would be "fair game."

Second, we do not conclude that the hearing judge committed clear error in excluding, on the ground of relevance, the information regarding the motivations behind grievances filed against other attorneys and the alleged extra-marital affairs of any witnesses. Although attorneys are afforded wide latitude in cross-examination concerning matters of credibility, a judge has discretion to prevent the admission of evidence that is irrelevant or unfairly prejudicial to the witness. *See* Md. Rule 16-757(a) ("The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court."); Md. Rules 5-401 to -404 (defining relevance and its general scope); *see also State v. Cox*, 298 Md. 173, 178, 468 A.2d 319, 321 (1983). It was permissible for the hearing judge to conclude that evidence of grievances concerning other attorneys and romantic relationships of the witnesses concerned collateral matters that are not probative significantly of the witnesses' character for truth or veracity.

Third, McDonald's complaints that he was prohibited unfairly from exploring Richardson's and Penny's alleged motivations to lie for political reasons or their alleged interference with McDonald's private practice clients appear to us to be baseless. The

hearing judge's ruling did not preclude McDonald from attempting to explore those areas on cross-examination or through other impeachment evidence. Furthermore, McDonald does not direct our attention to any portions of the record where the hearing judge prevented him otherwise from offering or admitting such evidence.

Fourth, the hearing judge's ruling excluded properly evidence regarding McDonald's proceedings before a peer review panel in the present case.[8] Peer review hearings are confidential, and speech, conduct, or writings made as part of a peer review hearing are privileged. Md. Rule 16-723(a). Therefore, the hearing judge concluded appropriately that evidence from McDonald's peer review hearing was irrelevant. *Usiak*, 418 Md. at 682 n.9, 18 A.3d at 10 n.9 ("[E]vidence that was presented to the Peer Review Panel, and its assessment of that evidence, is irrelevant to our review of the evidence presented at Respondent's actual disciplinary evidentiary hearing."). Accordingly, McDonald's Exception numbered 2 is overruled.

In his Supplemental Exception numbered 2, McDonald seeks to bolster the bias argument from Exception numbered 2 by submitting email exchanges between

---

[8] Md. Rule 16-743(a) describes the purpose of the peer review process:

> The purpose of the peer review process is for the Peer Review Panel to consider the Statement of Charges and all relevant information offered by Bar Counsel and the attorney concerning it and to determine (1) whether the Statement of Charges has a substantial basis and there is reason to believe that the attorney has committed professional misconduct or is incapacitated, and, if so, (2) whether a Petition for Disciplinary or Remedial Action should be filed or some other disposition is appropriate. The peer review process is not intended to be an adversarial one and it is not the function of Peer Review Panels to hold evidentiary hearings, adjudicate facts, or write full opinions or reports.

Richardson and Assistant Bar Counsel in this matter that McDonald received, after the evidentiary hearing, in response to a Maryland Public Information Act request. McDonald argues that the emails demonstrate a personal relationship between Assistant Bar Counsel and Richardson revealing evidence of bias. Not only are the emails irrelevant because they were exchanged after the record was closed in the present case, but the content of them appear to consist only of jokes having no bearing on the substance of the case nor do they indicate that any improper bias was present at the time of McDonald's evidentiary hearing. McDonald's Supplemental Exception numbered 2 is overruled.

### Exception Numbered 4 and Supplemental Exception Numbered 1

In Exception numbered 4, McDonald perceives that the hearing judge erred in denying his motion to strike Richardson's testimony for alleged sequestration violations. As Bar Counsel points out, however, McDonald's attorney never moved actually to have testimony stricken based on violation of a sequestration order.[9] The record reflects that Richardson was called as a rebuttal witness by Bar Counsel, and indicated, during cross-examination by McDonald's attorney, that he read in a newspaper that other witnesses in the case alleged during their testimony that Richardson engaged in misconduct by

---

[9] There was an order for general sequestration. The hearing judge agreed to grant McDonald's oral motion for sequestration and told the witnesses at the beginning of the hearing, "[Y]ou'll need to remain in the hallway until you're called to testify. It also means you can't discuss your testimony or the case with anybody else until it is concluded." The only witnesses who were called in Bar Counsel's case-in-chief and on rebuttal were Richardson and Penny. The judge noted to each of them at the end of their testimony in Bar Counsel's case-in-chief that they were being excused at that time, but were subject to re-call on rebuttal.

"fixing" tickets for family and friends. McDonald's counsel then asked Richardson whether any specific person told him about McDonald's testimony during the hearing, and Richardson replied "Nobody told me what his testimony was." Richardson explained that he was asked by Assistant Bar Counsel whether he knew who Joe Gilberto and Andrew Langer were, who happened to be the people for whom Richardson allegedly "fixed" tickets, and that he "put[] two and two together."

McDonald's attorney complained subsequently, at a bench conference, that the judge's sequestration order had been "grossly violated," but indicated that he did not know who violated it, and could not offer any specific evidence of the alleged violation. Assistant Bar Counsel explained that Richardson was asked about the allegations against him for the purpose of preparing his rebuttal testimony, but that Richardson was not told about any specific testimony that occurred during the hearing. Additionally, when Assistant Bar Counsel expressed umbrage at the suggestion she was implicated in a sequestration violation, McDonald's counsel explained that he was not accusing her of a violation and that he did not know, in fact, who was responsible for the violation he alleged. The hearing judge indicated that there was nothing the court could do without specific evidence of a sequestration violation and who committed it. Thereafter, McDonald's counsel made no motion to strike Richardson's testimony.

Regarding his Supplemental Exception numbered 1, McDonald attached several emails he received, after the evidentiary hearing in this case in response to his Public Information Act request, and argues that they constitute evidence that Assistant Bar

-27-

Counsel violated the sequestration order and dissembled during the bench conference before the hearing judge regarding her role in the drama.

The emails McDonald submits, however, do not prove that a violation occurred. Rather, their content is consistent with Assistant Bar Counsel's representations to the hearing judge at the bench conference. Nowhere in the emails does Assistant Bar Counsel mention the testimony of any other witness to either Richardson, Penny, or Pyle. McDonald claims that the emails demonstrate that Assistant Bar Counsel violated the sequestration order by sending a defense exhibit (Exhibit 18) to Richardson before he gave his rebuttal testimony, and that Assistant Bar Counsel "was also speaking to sequestered witnesses during the trial via telephone on a repeated basis."

Sequestration prohibits attorneys from "disclos[ing] to a witness excluded under th[e] Rule the nature, substance, or purpose of testimony, exhibits, or other evidence introduced during the witness's absence." Md. Rule 5-615(d)(1). Assistant Bar Counsel forwarded the exhibit to Richardson on 30 January 2013, the day before it was introduced by McDonald's counsel in his defense case-in-chief, and, thus, was not in violation of the order in this case or the Rule. Although several emails indicate that Assistant Bar Counsel asked sequestered witnesses to call her, those emails contain no indications that any ensuing discussions involved information revealed to the witnesses in violation of the sequestration order. The emails McDonald relies on appear to be consistent with Assistant Bar Counsel's representation to the hearing judge that her communications were for the purpose of preparing rebuttal testimony.

-28-

McDonald also complains in this Supplemental Exception that Richardson and other witnesses emailed each other an online news article about McDonald's case. McDonald offers no legal authority, however, to support his assertion that the witnesses violated the order by reading a news article or that his suggested remedy—striking their entire testimony—would be appropriate even if the sharing of the article constituted a violation. McDonald submitted copies of an email chain in which Pyle copied what appears to be a news report about McDonald's case from an Internet source into the body of an email and sent it to Richardson, without adding any commentary of her own, on 29 January 2013. Richardson, in turn, forwarded the email from Pyle, without any commentary by him, to Penny. The news story copied into the emails discusses portions of McDonald's testimony in the disciplinary hearing, as well as the testimony of Miller during McDonald's defense case. The exchange of emails took place two days before Penny and Richardson were recalled by Bar Counsel to give rebuttal testimony.

Although the emails between the three witnesses was probably improper, we do not conclude that this assumed violation requires, as McDonald requests, that we remand this case to the hearing judge for consideration of a sequestration violation and potential striking of testimony. When the hearing judge advised the witnesses regarding sequestration, she did not prohibit expressly them from reading news articles about the case. Moreover, even though Penny and Richardson were recalled as rebuttal witnesses after having noted, presumably, the news story in the email chain, the subjects of McDonald's and Miller's testimony discussed in the news story appear unrelated to the

subjects to which Penny and Richardson testified on rebuttal.[10]  Thus, nothing Penny and

Richardson may have learned from the news story about the prior testimony of

McDonald or Miller resulted in the "artificial harmony of testimony that prevents the trier

of fact from truly weighing all the testimony[, or] . . . the outright manufacture of

testimony," which Md. Rule 5-615 is intended to prevent.  *Redditt v. State*, 337 Md. 621,

629, 655 A.2d 390, 394 (1995) (quoting *Hurley v. State*, 6 Md. App. 348, 351-52, 251

A.2d 241, 244 (1969)); *see also Erman v. State*, 49 Md. App. 605, 624, 434 A.2d 1030,

1042 (1981) (holding that a trial court did not abuse its discretion by denying a motion to

exclude testimony of a witness, for an alleged sequestration violation, where "no

impermissible harmonization of testimony could be inferred from [the witness's] reading

of the newspaper, in the absence of any evidence that this testimony was based on what

he read").

The hearing judge's response that nothing could be done without specific evidence

of a violation was proper under the circumstances.  The judge did not commit "clear error

by not striking the testimony of Lance Richardson" when no motion to strike was made at

that time.  None of the evidence presented by McDonald in this Supplemental Exception

changes matters.  McDonald's Exceptions are overruled.

---

[10] Although Richardson admitted, during his rebuttal testimony, that he recalled reading a
news story discussing another witness's allegation that Richardson was involved in ticket
fixing, the news report copied in the email exchange received in post-hearing "discovery"
by McDonald does not discuss that subject.  In light of numerous references in the
hearing transcript to members of the press being in the courtroom during the proceedings,
it seems more likely that Richardson read some other news account of the trial.

Exception Numbered 7

McDonald argues in Exception numbered 7 that the hearing judge committed clear error by allowing into evidence personnel records of a deputy sheriff.  In support of his argument, McDonald relies on *Montgomery County v. Shropshire*, 420 Md. 362, 23 A.3d 205 (2011), and Maryland Code, State Government Article, § 10-627.  McDonald's exception mischaracterizes the evidence once again.  The evidence in question is a chain of emails between McDonald and Knotts that was forwarded to a deputy sheriff, and intercepted during an investigation of that deputy.  The only information in the emails related to the deputy sheriff was redacted for purposes of presentation during the hearing in McDonald's disciplinary case.  The evidence contained no personal information about the deputy sheriff, and therefore was not a personnel record, i.e. it was not related to "'the hiring, discipline, promotion, dismissal, or any matter involving an employee's status.'" *Shropshire*, 420 Md. at 378, 23 A.3d at 215 (quoting *Kirwan v. The Diamondback*, 352 Md. 74, 83, 721 A.2d 196, 200 (1998)); *see also Md. Dep't of State Police v. Md. State Conf. of NAACP Branches*, 430 Md. 179, 195, 59 A.3d 1037, 1046 (2013) (holding that records regarding complaints against State Police officers, which would be exempt from disclosure when unredacted, where no longer exempt "[a]fter the names of State Police troopers, the names of complainants, and all identifying information [we]re redacted").  We conclude, therefore, that the hearing judge committed no error in admitting the evidence, and overrule McDonald's Exception.

Exception Numbered 12

McDonald's Exception numbered 12 combines a confusing conglomerate of factual arguments, legal propositions, and citations to legal authorities, compressed into a grand plan of persuading us that "[t]he *nolle prosequi* of the traffic tickets of Ms. Knotts is beyond the revisory power of the Court." To explain the reasons why McDonald's Exception is misguided, we consider his arguments piecemeal.

McDonald begins this Exception by arguing again that he entered the *nolle prosequi* dispositions in exchange for confidential law enforcement information provided by Knotts. He contends that because he did not violate Knotts's fundamental fairness rights or violate speedy trial doctrine when he entered *nolle prosequis* in her favor, there is no issue for a court to review. McDonald continues that he was prejudiced by the hearing judge because his refusal to testify, on the record and in front of members of the press, regarding confidential law enforcement information relayed by Knotts was held against him. As stated above, the hearing judge did not find credible McDonald's claim that Knotts was a confidential law enforcement source of the Office and that he entered *nolle prosequi* dispositions in accordance with Office policy in exchange for the information she provided. We perceive no error in that finding. Because there was competent and credible evidence from other witnesses that Knotts was not a confidential source, and Knotts's own testimony on that subject was self-contradictory, McDonald was not prejudiced by the hearing judge's finding.

McDonald then repeats some of the same arguments from his Exceptions numbered 5 and 6 before referring us to portions of appellate opinions,[11] a Maryland Attorney General's opinion,[12] the Maryland Code,[13] and the Maryland Constitution[14] regarding the responsibilities of a prosecutor and the circumstances in which a prosecutor's decision to enter *nolle prosequi* in a particular case may be reviewable by the courts. Based on his interpretation of those authorities, McDonald contends that the circumstances of this case do not present the type of limited circumstances in which a court in any context may second-guess a prosecutor's entry of *nolle prosequi*.

The authorities McDonald relies on, however, are inapposite and his thesis overly broad. If this were an appeal from a judgment in a hypothetical *State v. Knotts* in which we were asked to determine whether *nolle prosequi* was entered improperly or without authorization in that case, his arguments regarding reviewability might, perhaps, carry

---

[11] *Wayte v. United States*, 470 U.S. 598 (1985); *Hook v. State*, 315 Md. 25 (1989); *Murphy v. Yates*, 276 Md. 475 (1975); *Alther v. State*, 157 Md. App. 316 (2004); *Mora v. State*, 123 Md. App. 699 (1998); *Ross v. State*, 117 Md. App. 357 (1997); *Middleton v. State*, 67 Md. App. 163 (1986), *overruled by Fairbanks v. State*, 331 Md. 482, 629 A.2d 63 (1993).

[12] 84 Op. Att'y Gen. 73 (1999).

[13] McDonald refers to "Annotated Code of Maryland Article 10, Section 34," which was repealed in 2008 and re-enacted as Md. Code, Crim. Proc. Art., § 15-102.

[14] McDonald cites Article 5, § 9 of the Maryland Constitution, the only potentially pertinent part of which reads: "The State's Attorney shall perform such duties and receive such salary as shall be prescribed by the General Assembly."

weight.[15]  This is, however, an entirely separate proceeding in which we (and the hearing judge) are considering whether McDonald abused his position as Deputy State's Attorney and violated the MLRPC.  No one questions whether McDonald, as Deputy State's Attorney, had fundamental authority to enter a *nolle prosequi* disposition, when appropriate to do so.  The question is whether he did so outside of the scope of his lawful duties and authority of his office and for the corrupt purpose of performing personal favors for Knotts.  Thus, in presiding over the present case, we do not intend to hem-in the breadth of a prosecutor's legitimate discretion in pursuing (or not) charges, but we determine the point at which a prosecutor's discretion is exercised illegitimately so as to overstep the bounds of ethical conduct.  On this point, we offer the sound reasoning of the Supreme Court of Indiana in *In re Christoff*, 690 N.E.2d 1135 (1997), where a county prosecutor and his chief deputy were disciplined for conspiring together to threaten a political rival by pursuing disciplinary charges against the rival in a case they decided previously not to prosecute:

> By our decision today, this Court does not seek to impair the exercise of prosecutorial authority or discretion.  The key element of culpability in the respondents' actions was their use of the prosecutorial powers to further their self-interests. . . . Use of prosecutorial authority becomes improper when the sole or overriding motivation for exercising it is the prosecutor's personal benefit or gain, and not to further the public interest of effective law application and enforcement.

---

[15] To be clear, we are not conceding that McDonald's arguments regarding reviewability would be meritorious even in such a hypothetical.  We are illustrating merely why, under the circumstances of this case, we need not even consider whether his arguments have merit.

690 N.E.2d at 1141.

Next, McDonald embraces a student-authored law review article[16] for the propositions that: (1) the courts may run afoul of the constitutionally-mandated separation of powers by disciplining prosecutors; and, (2) ethical codes for lawyers fail generally to provide adequate guidance for prosecutors. To suggest that we will (or the hearing judge did) violate separation of powers principles by presiding over this disciplinary proceeding, or that the MLRPC lack sufficient guidance for McDonald to have known, as a prosecutor, whether he would violate his ethical obligations in committing the relevant acts alleged, is fallacious. Prosecutors are not exempt from discipline under the Rules of Professional Conduct. Indeed, some of the rules are framed specifically with the conduct of prosecutors in mind. *See* MLRPC 3.8(a)-(e). Furthermore, we do not conclude that the rules McDonald is charged with violating in this case—prohibiting any lawyer from violating or attempting to violate the MLRPC; committing criminal acts that reflect adversely on a lawyer's honesty, trustworthiness, or fitness; engaging in dishonest conduct, or engaging in conduct that is prejudicial to the administration of justice—provided insufficient guidance from which an experienced Deputy State's Attorney should have surmised that entering *nolle prosequi* dispositions as personal favors to his co-worker, who also happened to be a person with whom he had an emotional attraction, would be unethical. Although McDonald maintains again that his entry of *nolle prosequi* dispositions in the five traffic citation cases were in

___

[16] Abby L. Dennis, Note, *Reining in the Minister of Justice: Prosecutorial Oversight and the Superseder Power*, 57 Duke L.J. 131 (2007).

accordance with Office policy as exchanges for confidential law enforcement information provided by Knotts, the hearing judge found rather that he did so as a personal favor and not for a legitimate purpose, and, as explained above, we perceive no clear error in that result.

McDonald continues in his Exception by contending that the manner in which he entered *nolle prosequi* dispositions cannot constitute a violation of MLRPC 8.4(d) because those actions did not involve a "systemic abuse of discretion," arguing that no reported appellate decision in any court in the United States addresses whether a prosecutor can be sanctioned for entering *nolle prosequi* improperly. The hearing judge found that McDonald entered improperly *nolle prosequi* for illegitimate purposes on five occasions over a period of two and a half years, which, in our view, constitutes a systemic abuse of prosecutorial discretion. Moreover, as Bar Counsel points out, cases in which prosecutors have been disciplined for entering impermissible *nolle prosequis* do exist. *See, e.g.*, *In re Jackson*, 27 So. 3d 273 (La. 2010) (lawyer disbarred for using his position as Assistant City Attorney to enter *nolle prosequi* prior to the arraignments of civilians who paid him to represent them in DWI cases).

Finally, McDonald concludes his Exception with what can best be described as a non-sequitur: "[t]he Respondent is not charged with violating office policy, nor is he charged with conflict of interest." This last gasp assertion has no bearing on whether McDonald violated Rule 8.4(a)-(d) by entering *nolle prosequi* dispositions as personal favors to Knotts, or the authority of the hearing judge and this Court to consider such

actions in an attorney disciplinary matter. Accordingly, we overrule McDonald's Exception.

## Exception Numbered 14

McDonald argues in this Exception that "Maryland Rule 16-757[17] has not been complied with in this case." We issued an Order on 16 May 2013, denying McDonald's Motion to Dismiss for Failure to Comply with Maryland Rule 16-757, which he filed prior to his Exceptions, but with the same arguments as in this Exception.[18] We shall not revisit McDonald's Rule 16-757 arguments. His Exception numbered 14 is overruled.

## Supplemental Exceptions Numbered 3 and 4

In Supplemental Exceptions numbered 3 and 4, McDonald asks this Court to remand this case to the hearing judge, pursuant to *Attorney Grievance Commission v.*

---

[17] McDonald's Exception refers specifically to subsections (c) and (e) of Rule 16-757 ("**Judicial Hearing**"), which read:

> . . . (c) Findings and Conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

> (e) Transmittal of Record. Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

[18] Although McDonald's Motion was filed prior to his Exceptions, our Order was not issued until after McDonald filed his Exceptions, which explains perhaps the duplication of arguments.

*Lee*, 387 Md. 89 (2005), so that he may offer evidence that became available to him only after the merits hearing. McDonald submits as "new" evidence a chain of emails, between Richardson and employees in the Human Resources Department of the State's Attorney's Office, and argues that they demonstrate a contradiction in Richardson's hearing testimony and thus undermine his credibility.

The emails, which were exchanged on 18 January 2013 (after Richardson's testimony in Bar Counsel's case-in-chief), do not conflict with Richardson's testimony. Although the emails do indicate that Richardson lacked some knowledge about the County's leave policies, that revelation does not contradict the testimony he gave earlier. On direct examination by Bar Counsel, Richardson testified about the arrangement by which McDonald "donated" personal leave to Knotts by completing alternate and misleading timesheets. He stated that he believed the arrangement "wasn't appropriate," and was not authorized by him. He described also how McDonald donated previously sick leave to Knotts by following the standard practice of the Office, e.g., by filing a form with the Human Resources Department. When asked if there was a standard practice for donating personal or annual leave (the types of leave involved in the transactions Richardson deemed inappropriate), Richardson testified:

> I don't believe you can give annual leave and, I mean, the only thing I had ever seen was sick leave and that's all I was aware that you were capable of donating and the rationale is if someone is sick, that's something you don't have any control over, as opposed to vacation or personal. No, I don't believe you can ever donate those. It was to help out someone who's in need.

Richardson's testimony does not indicate that he professed to know definitively the County's policies, and is not inconsistent with the emails on which McDonald relies in Supplemental Exception numbered 3. This Exception is overruled.

In Supplemental Exception numbered 4, McDonald again asks us to remand the case so that the hearing judge may reassess Richardson's credibility. In this Exception, McDonald argues that a chain of two emails indicates that Richardson entered *nolle prosequi* as personal favors for other persons, which, McDonald contends, contradicts Richardson's testimony at trial. The emails McDonald submits were sent in March 2013, two months after McDonald's hearing in the present case concluded, and do not concern any matters occurring before or during McDonald's hearing. These emails are not relevant, and we will not ponder further upon McDonald's Supplemental Exception numbered 4, which is overruled.

*3. The Parties' Exceptions to the Proposed Conclusions of Law*

Bar Counsel's Exceptions

Bar Counsel takes exception to the hearing judge's proposed conclusions of law concerning four bases of disciplinary charges against McDonald. More specifically, Bar Counsel takes exception to the hearing judge's conclusion that McDonald's acts of (1) "ticket-fixing" on behalf of Knotts, (2) intentional interference with the criminal prosecution of Knotts for embezzlement, (3) creating and submitting falsified timesheets on behalf of Knotts, and (4) accessing Knotts's computer on 6 July 2011 (following her termination from employment in the Office) did not violate MLRPC 8.4(c). Additionally, Bar Counsel takes exception to the conclusion that the ticket-fixing scheme

-39-

did not violate MLRPC 8.4(b), and that accessing Knotts's computer did not violate MPRC 8.4(b) or (d). McDonald's Exception numbered 13 challenges the hearing judge's conclusion that he violated MLRPC 8.4(a) & (d). As we shall evaluate in detail below, we sustain each of Bar Counsel's exceptions regarding MLRPC 8.4(c) and (d), and overrule McDonald's Exception concerning MLRPC 8.4(a) & (d). Because the sanction we shall impose based on McDonald's violations of 8.4(a),[19] (c), and (d) would not change if we granted Bar Counsel's Exceptions 1 and 4 as they relate to 8.4(b), we need not consider the merits of Bar Counsel's arguments within those Exceptions concerning MLRPC 8.4(b).

We first address Bar Counsel's Exceptions regarding MLRPC 8.4(c). The hearing judge concluded that Bar Counsel failed to prove, by clear and convincing evidence, that any of McDonald's charged conduct constituted violations of 8.4(c), which prohibits attorneys from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." Unfortunately, the hearing judge's Memorandum Opinion lacks sufficient specificity to allow us to determine precisely why she concluded as she did. In the Conclusions of Law section of the Memorandum Opinion, the hearing judge stated merely that "the Petitioner did not prove by clear and convincing evidence that the Respondent violated MLRPC 8.4(c)," because "[a]lthough the court finds that the

---

[19] The judge concluded that McDonald violated 8.4(a) based on her conclusion that McDonald violated 8.4(d) when he entered *nolle prosequis* for Knotts's traffic citations and interfered intentionally with her criminal prosecution for embezzlement. Bar Counsel filed no exception to the judge's conclusion regarding 8.4(a), nor does McDonald present us with a valid reason to disturb that conclusion. Accordingly, we adopt the judge's proposed conclusion of law that McDonald violated 8.4(a).

Respondent engaged in conduct that is prejudicial to the administration of justice . . . such conduct does not rise to the level of criminal behavior or constitute a finding of dishonesty, fraud, deceit or misrepresentation."

We suspect that the judge's conclusion regarding 8.4(c) may be the result of a misinterpretation of that Rule. Under Rule 8.4(c), "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The four types of misconduct enumerated in the Rule proscribe a broad universe of mis-behavior. "[D]ishonesty" is the broadest of the four terms, and encompasses, *inter alia*, "conduct evincing a lack of honesty, probity or integrity in principle; [a] lack of fairness and straightforwardness . . . . Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty." *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 25, 741 A.2d 1143, 1156 (1999) (quoting *In the Matter of Shorter*, 570 A.2d 760, 767-68 (D.C.App.1990) (alterations in original)). Applying these principles, we conclude that the following facts concerning each of the four categories of misconduct alleged by Bar Counsel convince us, as clear and convincing evidence, of MLRPC 8.4(c) violations.

As to the ticket fixing, there is no question that McDonald caused *nolle prosequi* dispositions to be entered for Knotts on five separate occasions. The hearing judge found that, in entering *nolle prosequi* for Knotts on those occasions, McDonald abused his position as Deputy State's Attorney in order to perform personal favors, with no legitimate law enforcement business purpose, for an employee with whom he had "an intense, and at times obsessive, infatuation." In our view, that is sufficient evidence from

which to conclude that McDonald violated MLRPC 8.4(c) in each of those five instances. Although of greater breadth than the discretion of District Court judges who adjudicate most traffic citations, the discretion of a prosecutor to enter *nolle prosequi* for such a citation should be based on an "honest appraisal of the facts and the law." *See In re: Formal Inquiry Concerning Judge A. Jerome Diener and Judge Joseph L. Broccolino, Jr.*, 268 Md. 659, 304 A.2d 587, (1973) (removing two District Court judges from the bench for issuing favorable judgments in traffic violation cases of friends and business associates). The evidence proves clearly and convincingly that McDonald's five *nolle prosequi* entries were made without an honest assessment of the facts and the law. The lack of integrity, fairness, and straightforwardness exhibited in McDonald's egregious misuse of the power afforded to him as a prosecutor in performing acts of favoritism for his love interest constitute dishonesty under the Rule.[20]

Regarding McDonald's interference with Knotts's embezzlement prosecution, there are four factual findings made by the hearing judge that we view as sufficient to sustain an 8.4(c) violation: (1) McDonald attempted on multiple occasions to speak directly to Trostle after the special prosecutor told him that he would communicate no longer with him about the case; (2) McDonald was "in constant contact with Knotts and her criminal defense attorney" during the same time period in which he was contacting continually Richardson and Trostle about the case; (3) McDonald conducted himself in a

---

[20] In Bar Counsel's first Exception and McDonald's response, the parties dispute whether McDonald entered, or caused to be entered, surreptitiously the *nolle prosequis* or did so without authorization from the officers who issued the citations. We need not resolve those disputes to arrive at the conclusion that McDonald violated 8.4(c).

manner that "ran afoul of what was appropriate for a senior member of [the State's Attorney's Office]—an office that coincidentally was the victim of Knotts's embezzlement;" and, (4) McDonald was "actively and intentionally interfering in the Knotts prosecution," despite his early and ongoing assurances that he would not involve himself in the case. The hearing judge found additionally, and we agree, that McDonald's interference in the embezzlement prosecution was not justified or mitigated by his claims that Trostle was violating an assertedly enforceable plea agreement between Richardson and Knotts and that the amount of restitution was inflated. When viewed in their totality, these facts demonstrate that McDonald's actions with regard to Knotts's embezzlement prosecution bespeak a lack of integrity and probity that constitute dishonesty under Rule 8.4(c).

The evidence concerning McDonald's timesheets also proves clearly and convincingly acts of dishonesty. The hearing judge's conclusion regarding the timesheets seems to contradict her own factual findings. She found that McDonald signed timesheets, on more than one occasion, indicating that he took leave on days when he worked actually. Moreover, the hearing judge found that McDonald did so knowingly after instructing Knotts that she could claim thereby to be working on days on which she would, in fact, not work actually. It may be that the hearing judge viewed the evidence as being insufficient to prove that McDonald perpetrated a fraud, an offense which requires a specific intent to deceive; however, that level of proof is not necessary for a conclusion of dishonesty. *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 707-08, 73 A.3d 161, 174 (2013). By signing inaccurate timesheets and providing them to Knotts with the

knowledge that she would then use them as a basis for concealing her own inaccurate timesheets, and which would result in an inaccurate accounting of the State's human resources, McDonald committed dishonest acts in violation of MLRPC 8.4(c).

The hearing judge's factual findings are also sufficient, in our view, to hold that McDonald violated MLRPC 8.4(c) when he accessed Knotts's Office computer the day after her termination. The hearing judge found that McDonald went into Knotts's former office, knowing she had been terminated for embezzlement the day before, and began deleting emails. Although the hearing judge concluded that there was nothing "nefarious or illegal" in his actions, we conclude that the evidence is sufficient to find that he acted dishonestly. McDonald's entry into Knotts's former office occurred within hours of his attempts to interfere with the issuance of criminal charges against her and the serving of the summons upon her. The hearing judge relied on the fact that there was nothing to indicate that Knotts's office was a crime scene, but given McDonald's knowledge of the progress of the case against her and the fact that he accessed her computer "admittedly for a different purpose" than other employees who used her computer for legitimate business had, indicates that McDonald knew he was acting inappropriately. Moreover, it is clear that McDonald entered Knotts's former office and deleted emails from her computer without authorization from the State's Attorney. Regardless of whether the evidence was sufficient to prove a criminal act by McDonald, it was sufficient to prove a dishonest act in violation of MLRPC 8.4(c). Accordingly, we sustain Bar Counsel's Exceptions numbered 1 and 4 as they pertain to MLRPC 8.4(c).

We conclude, additionally, that the evidence regarding McDonald's access to Knotts's computer proves, by clear and convincing evidence, a violation of MLRPC 8.4(d). McDonald knew, according to the factual findings, that Knotts had been fired and was being investigated for embezzlement. By entering her office and using her computer, without authorization under those circumstances, McDonald knew or should have known that his conduct could be affecting a criminal investigation, even if that was not his purpose in deleting the email files. His conduct did affect indeed the course of the investigation, even if the emails he deleted were not related to her embezzlement, because he caused Richardson, after discovering McDonald in Knotts's office logged onto on her computer, to dedicate time and resources of the State's Attorney's Office to recovering the deleted emails and determining whether they were relevant to the investigation. McDonald's actions, therefore, were prejudicial to the administration of justice. Accordingly, we sustain Bar Counsel's Exception numbered 4 as it pertains to MLRPC 8.4(d).

McDonald's Exception Numbered 13

In this Exception, McDonald makes several contentions challenging the hearing judge's finding that McDonald violated MLRPC 8.4(a) and (d), in part, by interfering with the criminal prosecution of Knotts. First, he argues that he was deprived of procedural due process because the hearing judge's proposed conclusion of law relied on facts not alleged in the Petition. He recites a litany of facts in the judge's Memorandum not alleged in the Petition.

-45-

A petition for disciplinary or remedial action is a notice pleading that "will be deemed sufficient [s]o long as the petition informs the attorney of the misconduct charged in language which is clear and sufficiently specific to enable the attorney to prepare a defense. . . . [N]o specific form or detail is required to satisfy this threshold requirement." *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 420-21, 969 A.2d 1010, 1020 (2009) (internal quotation marks and citations omitted). We conclude that the Petition in this case was sufficient to put McDonald on notice of the charges against him. Furthermore, McDonald points to no authority to support the proposition that every material fact relied on ultimately by the hearing judge from the admitted evidence must have been alleged in the Petition. There is no such authority, nor shall this opinion be the first of that kind.

The rest of McDonald's Exception consists mainly of arguments (about evidence) that have been considered and rejected in our consideration of his other Exceptions, and evidentiary matters for which he failed to object during the hearing. McDonald cites three cases as legal support for his argument that his actions did not constitute violations of 8.4(d). First, he fastens on *Attorney Grievance Commission v. Link*, 380 Md. 405, 844 A.2d 1197 (2004), for the proposition that "'[w]hen purely private, non-criminal conduct is implicated, the harm or potential harm must be 'patent' in order for conduct to rise to the level of conduct prejudicial to the administration of justice.'"[21] Although *Link* does

---

[21] McDonald attributes incorrectly this quotation to *Link* directly. In fact, the quotation is from our opinion in *Attorney Grievance Commission v. Rand*, 411 Md. 83, 96, 981 A.2d 1234, 1242 (2009), in which we paraphrased the holding of *Link*.

stand for that proposition, we distinguished *Link* from cases such as the present one where the attorney's conduct interferes with or affects pending litigation. *See Attorney Grievance Comm'n v. Hall*, 408 Md. 306, 331, 969 A.2d 953, 968 (2009). McDonald turns also to *Attorney Grievance Commission v. Rand*, 411 Md. 83, 981 A.2d 1234 (2009), and *Attorney Grievance Commission v. Kalil*, 402 Md. 358, 936 A.2d 854 (2007), for the proposition that "minimally intrusive conduct" does not violate Rule 8.4(d). The hearing judge found apparently, and we agree, that McDonald's conduct in attempting persistently to interfere with nearly every stage of, and nearly every person involved in, the investigation and prosecution of Knotts for embezzlement was more than "minimally" intrusive. We overrule McDonald's Exception numbered 13.

In light of our disposition of the parties' exceptions to the hearing judge's findings of fact and conclusions of law (and of those findings and conclusions not excepted to), we conclude that Bar Counsel proved, by clear and convincing evidence, that McDonald committed several violations of MLRPC 8.4(a), (c), and (d) in fixing tickets on Knotts's behalf, interfering in her prosecution for embezzlement, assisting in her use of inaccurate timesheets, and accessing her work computer to delete emails following her termination.

## C. Sanction

Unsurprisingly, the parties arrive at significantly different recommendations for the appropriate sanction in this case. Bar Counsel recommends disbarment, even if we were to overrule its Exceptions. Conversely, McDonald argues that, at worst, a reprimand may be appropriate under the circumstances. Our guiding principle in determining sanctions for ethical violations is our "interest in protecting the public and

the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 595, 876 A.2d 642, 660 (2005). The "purpose of attorney disciplinary proceedings is not to punish the lawyer, but to protect the public as well as to deter other lawyers from engaging in similar misconduct." *Pennington*, 387 Md. at 596, 876 A.2d at 660. In light of the violations that were proved, and our analysis of the aggravating and mitigating factors discussed below, we agree with Bar Counsel's recommendation that McDonald be disbarred from the practice of law in Maryland.

We look often to the American Bar Association's (ABA) *Standards for Imposing Lawyer Sanctions* (1992) for guidance in determining an appropriate sanction, including whether any aggravating factors are present in relation to the misconduct. *Attorney Grievance Comm'n v. Walker-Turner*, 428 Md. 214, 233, 51 A.3d 553, 564 (2012). We conclude that a number of the aggravating factors enumerated in Standard 9.22 are present in McDonald's case: (1) all of McDonald's conduct was committed under the influence of dishonest or selfish motives (9.22(b)) arising out of his choice to allow his infatuation for Knotts to overbear his professional integrity and responsibilities; (2) McDonald engaged in a pattern of misconduct (9.22(c)), and (3) committed multiple offenses (9.22(d)), by fixing five tickets over a period of more than two years and interfering at almost every juncture of the prosecution of Knotts for embezzlement; (4) McDonald refuses to acknowledge the wrongful nature of his conduct (9.22(g)) and continues to point the finger at what he alleges to be improprieties of witnesses in the case against him, even where their alleged conduct, if true, would not excuse or mitigate the impropriety of his own conduct; and (5) having worked as a prosecutor for over a

-48-

decade before the events in this case occurred, McDonald had substantial experience in the practice of law (9.22(i)) that should have given him an experiential basis from which to know his actions were unethical.

The only mitigating factor applicable in this case is the lack of a prior disciplinary record (Standard 9.32(a)). This is diluted, to some extent, by the number of offenses McDonald committed and the extended period of time over which he committed them.

Prosecutors must be "held to even higher standards of conduct than other attorneys due to their unique role as both advocate and minister of justice." *Attorney Grievance Comm'n v. Gansler*, 377 Md. 656, 697, 835 A.2d 548, 572 (2003). Furthermore, "[d]isbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses the position with the intent to obtain a significant benefit or advantage for himself or another." ABA, *Standards for Imposing Lawyer Sanctions* 5.21 (1992). We conclude that, although McDonald resigned from his position as Deputy State's Attorney, disbarment is the appropriate sanction for McDonald's misconduct, including his abuse of his former position as a government official, in order to protect the public, maintain the public's confidence in the legal profession, and deter similar misconduct by public officials in the future.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOHN MARK MCDONALD.**

-49-